NEWELL PUERTO RICO, LTD.,
Plaintiff–Appellee,

v.

RUBBERMAID INCORPORATED,
Defendant–Appellant.

NEWELL PUERTO RICO, LTD.,
Plaintiff–Appellant,

v.

RUBBERMAID INCORPORATED,
Defendant–Appellee.

Nos. 93–1431, 93–1451 and 93–1516.

United States Court of Appeals,
First Circuit.

Heard Nov. 5, 1993.

Decided March 31, 1994.

---

18

The jury found that Rubbermaid terminated the distribution agreement without just cause and awarded Newell $1,400,000 in damages. Rubbermaid then filed a motion for a new trial. The district court denied Rubbermaid's motion and entered judgment against Rubbermaid. Rubbermaid now appeals the court's denial of its motion for a new trial. Specifically, Rubbermaid argues that (1) the district court abused its discretion in admitting certain testimony by one of Newell's expert witnesses, and (2) the jury's finding on the issue of just cause was against the clear weight of the evidence.

Newell also filed a motion requesting pre and post-judgment interest and attorneys' fees. The court granted Newell's motion for post-judgment interest but denied its motion for pre-judgment interest and attorneys' fees. Newell appeals the court's denial of pre-judgment interest and attorneys' fees.

## I. BACKGROUND

We review the evidence and draw inferences therefrom in the light most favorable to the verdict winner in this case, Newell. *International Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.,* 851 F.2d 540, 542 (1st Cir.1988).

### A. The Distribution Agreement

On May 31, 1968, Rubbermaid entered into an agreement with Anchor Hocking Interamericana, Ltd. for the exclusive distribution of the Rubbermaid Houseware Product Line in Puerto Rico and the United States Virgin Islands. ("Distribution Agreement"). On March 28, 1972, Anchor Hocking Interamericana, Ltd. assigned and transferred its rights in the Distribution Agreement to Anchor Hocking Puerto Rico, Ltd. ("Anchor P.R.").[1] From July 2, 1972 to July 1, 1987, Anchor P.R., became the exclusive distributor of Rubbermaid Houseware Products in Puerto Rico and the Virgin Islands. On July 2, 1987, Newell Company acquired Anchor Hocking Corporation and its subsidiaries, including Anchor P.R. and thereafter continued

Miguel E. Bonilla–Sierra, with whom Carlos T. González–Contreras, Maricarmen Almodóvar–Díaz and González, Bonilla & Quiñones–Tridas, were on brief, for Rubbermaid Inc.

Adrián Mercado, with whom Mercado & Soto, was on brief, for Newell Puerto Rico, Ltd.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Circuit Judge.

Plaintiff-appellee, Newell Puerto Rico, Ltd. ("Newell"), brought an action for damages against Rubbermaid Incorporated ("Rubbermaid"), alleging that Rubbermaid, without just cause, terminated and impaired the exclusive distribution agreement between the two parties in violation of the Puerto Rico Dealers' Act, commonly known as "Law 75." P.R.Laws Ann. tit. 10, § 278 *et seq.* (1989 Supp.). The action was tried before a jury.

1. Anchor Hocking Puerto Rico, Ltd. was a wholly owned subsidiary of Anchor Hocking Corporation which was incorporated in Delaware on March 27, 1972, for the purpose of acquiring and selling products in Puerto Rico.

the distribution of Rubbermaid products in Puerto Rico and the Virgin Islands.

On October 31, 1991, Rubbermaid notified Newell that it was terminating the Distribution Agreement, effective in ninety days, because Anchor P.R. had been unable to achieve assigned sales objectives and because Newell manufactured and distributed similar products which created a conflict of interest in its distribution of Rubbermaid products. Rubbermaid then terminated the Distribution Agreement. The effective date of termination was February 3, 1992. Anchor P.R. changed its name to Newell Puerto Rico, Ltd. In February 1992, Newell brought suit against Rubbermaid, claiming that Rubbermaid's termination of the Distribution Agreement was unjustified.

### B. Expert Witness Testimony

During the course of discovery, in June 1992, Newell's expert witness on damages, Mr. José Villamil, submitted a written report estimating Newell's damages under Law 75. In July 1992, Rubbermaid's expert, Dr. Elías R. Gutiérrez, submitted a report challenging the accuracy of the valuation estimate presented by Mr. Villamil, and questioning whether the estimate was prepared according to acceptable professional standards. Doctor Gutiérrez concluded that major flaws were present in the methods used by Mr. Villamil to estimate damages, and these flaws had the effect of producing an upward bias in the estimated value of damages for the Rubbermaid line of products.[2]

During his first deposition on August 11, 1992, Mr. Villamil acknowledged that he inadvertently included the value of the Rubbermaid Commercial Products Line, which is not at issue in this case, in his valuation of damages.[3] Accordingly, Mr. Villamil agreed to adjust his estimate and submit an amended report reflecting his new evaluation. On August 13, 1992, four days prior to trial, Mr. Villamil submitted an amended report.[4] According to Rubbermaid, this amended report included new calculations using a methodology and valuation procedure different from that used in Mr. Villamil's previous report. On August 13, the court ordered that both experts be deposed anew and that transcripts of the depositions be filed not later than August 27, 1992. The Court further determined that it would appoint an economist to render a neutral expert report. Trial was rescheduled for December 21, 1992.

Mr. Villamil was deposed again on August 20, 1992. During this deposition, Mr. Villamil again acknowledged that corrections should be made to his calculations. On August 27, 1992, Rubbermaid filed a "Motion to Disqualify Plaintiff's Expert Witness, Exclude Plaintiff's Expert Witness Reports and Request for Sanctions." The court denied this motion.

On December 8, 1992, the court appointed expert, Ernst & Young, rendered a report which included a review of the different reports filed by the expert witnesses for the parties and an independent calculation of a value or a range of values of damages for the distribution agreement under Law 75. On January 19, 1993, due to additional information provided by counsel for Newell, Ernst & Young supplemented the December 8 report. On February 2, 1993, Ernst & Young submitted a final report.[5]

During trial, the court heard testimony from Ernst & Young regarding its report. Mr. Villamil then testified as an expert for Newell. At trial, Rubbermaid expressly conceded that Mr. Villamil was qualified as an expert. Mr. Villamil testified that he believed his role was to evaluate Ernst & Young's report. Rubbermaid objected to

---

2. Doctor Gutiérrez estimated damages, including a goodwill component, to be between $247,686 and $269,431.

3. The Distribution Agreement which is the subject of this lawsuit concerns the Rubbermaid Houseware Products Line. The Rubbermaid Commercial Products Line is a separate and distinct line of products not relevant to this case.

4. In his amended report, Mr. Villamil estimated damages, not including goodwill, to be between $1,620,000 and $2,941,000. He estimated goodwill at $1,013,749 and therefore, the total value of the distribution of the Rubbermaid product line in Puerto Rico at between $2,633,749 and $3,954,749.

5. The court appointed expert estimated the present value of lost pre-tax profits at $585,951.

Mr. Villamil's testimony on the grounds of surprise, arguing that his expressed views were different from and inconsistent with the opinions rendered in his reports. The court overruled the objection and permitted Mr. Villamil to testify.

## II. DISCUSSION

### A. Admission of Expert Testimony

■ Rubbermaid challenges the admission at trial of Mr. Villamil's testimony on grounds of surprise. Federal Rule of Civil Procedure 60(b)(1); *Pérez–Pérez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 283 (1st Cir.1993).

At the time of Mr. Villamil's testimony, Rubbermaid's counsel objected on the ground that Mr. Villamil was presenting new computations to the jury not contained in his first or second report. The court overruled Rubbermaid's objection, indicating that Mr. Villamil was entitled to criticize constructively Ernst & Young's report. When ruling on Rubbermaid's objection, the district court stated that Rubbermaid was entitled to "cross-examine him in light of not only this analysis he is making here today but in relation to the analysis he has made previously of the reports you have rendered and which you have a copy and which were the object of the deposition."

Rubbermaid knew that Mr. Villamil was going to be an expert witness at trial. Moreover, Rubbermaid was very familiar with the subject matter upon which he would render his testimony. Rubbermaid had ample opportunity to cross-examine Mr. Villamil. Even if Rubbermaid had been surprised by Mr. Villamil's testimony, the appropriate remedy would have been to ask for a continuance to allow Rubbermaid to prepare for the presentation of rebuttal testimony. *Szeliga v. General Motors Corp.*, 728 F.2d 566 (1st Cir.1984) (the remedy for surprise in the introduction of evidence is not to seek reversal after an unfavorable jury verdict, but a request for continuance at the time surprise occurs). Rubbermaid did not request a continuance, a sidebar or even a limiting jury instruction. *See Smith v. Massachusetts Institute of Technology*, 877 F.2d 1106 (1st Cir.1989), *cert. denied*, 493 U.S. 965, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989) (courts look with disfavor on parties who claim surprise but who do not ask for a recess so they may attempt to counter the opponent testimony).

Rubbermaid also claims that Mr. Villamil's testimony was inadmissible pursuant to Fed. R.Evid. 702, 703, 705 and 403 and Fed. R.Civ.P. 26(e). We find Rubbermaid's claims to be without merit.

■ The admissibility of opinion evidence by experts is a matter within the discretion of the trial court and its determination of admissibility should be sustained unless clearly erroneous. *International Adhesive Coating Company*, 851 F.2d at 544. Federal Rules of Evidence 702 [6] and 703 [7] "allow an expert to present scientific or technical testimony in the form of opinion based on facts or data perceived or made known to the expert before or at trial." *DaSilva v. American Brands, Inc.*, 845 F.2d 356, 360 (1st Cir.1988). Once admitted, Rules 703 and 705 [8] then "place the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *International Adhesive Coating Company*, 851 F.2d at 544–45 (quoting

---

6. Federal Rule of Evidence 702 provides:

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

7. Federal Rule of Evidence 703 provides:

 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

8. Federal Rule of Evidence 705 provides:

 The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

*Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir.1980)).

> [I]f in arriving at his opinion the expert has reasonably relied on facts or data before trial, the basis for the opinion need not be disclosed as a condition to admitting testimony. The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion.... Moreover, the fact that an expert's testimony may be tentative or even speculative does not mean that the testimony must be excluded so long as opposing counsel has an opportunity to attack the expert's credibility. When the factual underpinning of an expert opinion is weak, it is a matter affecting the weight and credibility of the testimony—a question to be resolved by the jury.

*International Adhesive Coating Company,* 851 F.2d at 544 (citations omitted).

█ The district court has broad discretion to decide whether evidence should be excluded under Rule 403.[9] "[O]nly rarely— and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's ... judgment concerning the relative weighing of probative value and unfair effect." *Pinkham v. Burgess*, 933 F.2d 1066, 1071 (1st Cir.1991) (quoting *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1340 (1st Cir. 1988)). The district court's refusal to exclude Mr. Villamil's testimony under Rule 403 does not present such an extraordinary circumstance. Rubbermaid suggests that Mr. Villamil's testimony had the effect of confusing and misleading the jury and should have been excluded under Rule 403. We disagree. Mr. Villamil was Newell's only expert as to damages. Newell was entitled to present witnesses on the issue of damages. At trial, Rubbermaid conceded Mr. Villamil's qualifications as an expert in this area. Juries are often asked to determine complex issues of fact after listening to expert testimony. Rubbermaid was able to cross-examine both Mr. Villamil and the Ernst & Young expert as to their testimony and to present testimony by its own expert witness on the issue of damages. In light of these factors, we do not believe the district court abused its discretion in determining that Mr. Villamil's testimony had substantial probative value that was not outweighed by unfair prejudice and should not be excluded under Rule 403.

█ Rubbermaid's argument that Mr. Villamil's testimony was inadmissible pursuant to Fed.R.Civ.P. 26(e)[10] is equally without merit. In essence, Rubbermaid argues that Mr. Villamil's opinion testimony proffered during trial was different from the opinions he rendered during the pretrial litigation and that Newell failed to supplement and amend its discovery responses as required by Rule 26(e) to reflect those differences.

"[I]n reviewing a contention that answers were not properly supplemented within the strictures of Rule 26(e), a court should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability

---

9. Federal Rule of Evidence 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

10. Federal Rule of Civil Procedure 26(e) states:
 *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:
 (1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.
 (2) A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which (A) the party knows that the response was incorrect when made, or (B) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
 (3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

of the [opposing party] to formulate a response." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir.1992) (internal citation and quotations omitted). It is not unusual for experts to make changes in their opinions and revise their analyses and reports frequently in preparation for, and sometimes even during, a trial. In the present case, the parties did not stipulate that they would accept without question the findings of Ernst & Young, the court appointed expert. Newell was therefore entitled to have its expert, Mr. Villamil, criticize the Ernst & Young report and testimony in an attempt to discredit that report and testimony. Mr. Villamil was Newell's only expert on damages, hence, Mr. Villamil's testimony was a very important part of Newell's case. If counsel for Rubbermaid felt ill-prepared to cross-examine Mr. Villamil when faced with his testimony at trial, counsel's solution was to request a continuance. Rubbermaid's failure to do so will not now result in a new trial.

### B. Jury's Finding of Just Cause

■ A federal judge may grant a new trial where the jury's verdict is against the clear weight of the evidence. *Kearns v. Keystone Shipping Co.*, 863 F.2d 177, 181 (1st Cir.1988) (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806 (1973)). A trial court should set aside a jury verdict only to prevent a miscarriage of justice. *Kearns*, 863 F.2d at 181. We review the district court's refusal to grant Rubbermaid's motion for a new trial for an abuse of discretion. *Id.* at 179; Fed.R.Civ.P. 59(a). So long as a reasonable basis exists for the jury's verdict, we will not disturb the district court's ruling on appeal. *Grenada Steel Industries, Inc. v. Alabama Oxygen Co.*, 695 F.2d 883 (5th Cir.1983). Mere disagreement with the verdict will not justify the granting of a new trial. *Keeler v. Hewitt*, 697 F.2d 8, 11 (1st Cir.1982). After carefully reviewing the record below, we find no abuse of discretion in the district court's decision not to disturb the jury's finding that Rubbermaid failed to establish just cause for terminating its contract with Newell.

In its complaint, Newell alleged that Rubbermaid's termination of the Distribution Agreement was without just cause. Newell further alleged that actions taken by Rubbermaid in violation of the Distribution Agreement caused a decline in Newell's annual sales of Rubbermaid products. According to Newell, Rubbermaid took actions which were detrimental to the established relationship and which violated the Distribution Agreement by:

1. making direct sales to retailers;
2. imposing unreasonable sales quotas on Newell;
3. reclassifying some of its housewares products to take them out of the Distribution Agreement; and
4. delaying and refusing to service orders placed by Newell.

■ The Puerto Rico Dealer's Contract Act, P.R. Laws Ann. tit. 10, §§ 278–278d (1976), known as "Law 75," prohibits a supplier from unilaterally terminating a distribution agreement with a dealer or refusing to renew it on its normal expiration except for "just cause." 10 L.P.R.A. 278a. Law 75 was enacted to prevent suppliers from terminating dealers in Puerto Rico once these dealers had invested in the business to create and build a profitable market for the suppliers' products. *Líneas Aéreas Costarricenses, S.A. v. Caribbean General, Inc.*, 682 F.Supp. 117 (D.P.R.1988) (citing *Warner Lambert v. Tribunal Superior*, 101 D.P.R. 378, 101 P.R.R. 527 (1973)).

As noted, Law 75 permits a supplier to terminate a distribution agreement for "just cause". Section 278(d) of the Act defines "just cause" as follows:

> nonperformance of any of the essential obligations of the dealer's contract on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interest of the principal or grantor in promoting the marketing or distribution of the merchandise or service.

By its terms, Law 75 sets forth a variety of circumstances under which, once a dealer has shown that the supplier terminated its contract, the supplier bears the burden of showing just cause for the termination. Section 278a–1 of the Act, which bears the heading,

*Just cause for termination; exceptions; presumptions,* sheds light on the mechanics of the just cause exception. Section 278a–1(a) of the Act establishes that certain violations or nonperformance by a dealer of any provision included in the dealer's contract "shall not be considered as being just cause *unless the principal or grantor shows* that such nonperformance may affect, or has truly and effectively affected the interests of such principal or grantor in an adverse or substantial manner in the development of the market, distribution of the merchandise or rendering of services" (emphasis added). Hence, under this section, in order to show just cause, the supplier bears the burden of showing that the dealer's violations or nonperformance of the contract adversely affected the suppliers interests.

It is uncontested that Rubbermaid unilaterally terminated the Distribution Agreement. Rubbermaid sought to show just cause under Law 75 by arguing that termination was justified because Newell failed to achieve assigned sales objectives and experienced a decline in sales of Rubbermaid products, and that Newell's sale of other product lines, not related to Rubbermaid, created a conflict of interest detrimental to the Distribution Agreement between Newell and Rubbermaid and therefore, adversely affected Rubbermaid's interests. Newell presented evidence to counter these allegations from which the jury could reasonably conclude that Rubbermaid did not have just cause to terminate the Distribution Agreement. Newell's evidence included testimony to the effect that any decline in Rubbermaid sales by Newell was caused by Rubbermaid's own actions in violation of the Distribution Agreement. In particular, there was evidence indicating that Rubbermaid was selling products directly to Pitusa (a retail store in Puerto Rico) at the same price it sold to Newell, undercutting the ability of Newell to compete on the Puerto Rican market for sales of Rubbermaid products. Additionally, evidence indicated that plastic houseware products manufactured by Newell which, according to Rubbermaid, created a conflict of interest with Rubbermaid products, had been manufactured by Anchor P.R. since 1968 and competed with Rubbermaid products for the entire span of the contract. Newell's evidence indicated that there was no new competition introduced by the Newell acquisition of Anchor P.R. or any other conflict in interest that would justify termination of the Distribution Agreement.

Newell also presented evidence to the effect that its assigned sales objectives did not adjust to the realities of the Puerto Rican market. This evidence included testimony to the effect that the sales objectives were unreasonable. Additionally, Newell proffered to the jury in the form of an analysis of its sales activities from 1986 to 1990. The analysis purported to show that Newell's sales were adversely affected by several factors, including Hurricane Hugo and direct sales by Rubbermaid, but that overall, the company was successfully selling Rubbermaid products.

 Section 278a–1(c) establishes that where a dealer violates a provision in the agreement fixing rules of conduct or setting distribution quotas or goals because it does not adjust to the realities of the Puerto Rican market at the time, the violation will not be deemed just cause and "[t]he burden of proof to show the reasonableness of the rule of conduct or of the quota or goal fixed shall rest on the principal or grantor." Under this section, once Newell presented evidence showing that the assigned sales objectives did not adjust to the realities of the Puerto Rican market, it was Rubbermaid's burden to show the reasonableness of the sales objectives. In finding against Rubbermaid, the jury concluded that Rubbermaid did not meet its burden. Judging the credibility of the witnesses and weighing the evidence are within the exclusive province of the jury. *United States v. Garcia,* 995 F.2d 556, 561 (5th Cir.1993); *Lessee of Ewing v. Burnet,* 36 U.S. 41, 9 L.Ed. 624 (1837). We will not substitute our judgment for that of the jury in its evidentiary findings. After reviewing the record, we conclude that the jury's verdict is not against the clear weight of the evidence.

### ATTORNEYS' FEES & PRE–JUDGMENT INTEREST

 Newell appeals the district court's denial of its motion for attorneys' fees

and pre-judgment interest. Puerto Rico Rule 44.1(d) on attorneys' fees and 44.3(b) on pre-judgment interest are rules of decision that should be applied by the Federal Court sitting in diversity. *De León López v. Corporación Insular de Seguros*, 931 F.2d 116, 126 (1st Cir.1991); *Pan American World Airways, Inc. v. Ramos*, 357 F.2d 341, 342 (1st Cir.1966) (Puerto Rico Rules of Civil Procedure 44.1(d) and 44.3(b) are a matter of substantive law to be applied by the federal court sitting in diversity). The decision to award such fees is within the discretion of the district court and we will only disturb its ruling where there has been an abuse of that discretion. *De León López*, 931 F.2d at 126–27.

Under Rule 44.3(b) and 44.1(d) of the Puerto Rico Rules of Civil Procedure, imposition of pre-judgment interest and attorney's fees on the non-prevailing party is mandatory where the party was obstinate and stubbornly litigious. Rule 44.3(b) on pre-judgment interest provides:

(b) Except when the defendant is the Commonwealth of Puerto Rico, its municipalities, agencies, instrumentalities or officers acting in their official capacity, the court will also impose on the party that has acted rashly the payment of interest at the rate fixed by the Board by virtue of the previous subsection which is in effect at the moment the judgment is pronounced, from the time the cause of action arises in every case of collection of money and from the time the claim is filed in actions for damages until the date judgment is pronounced, to be computed on the amount of the judgment. The interest rate shall be stated in the judgment.

P.R.Laws Ann. tit. 32, App. III, Rule 44.3(b) (1989 Supp.).

Rule 44.1(d) on attorney's fees states:

In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct.

P.R.Laws Ann. tit. 32, App. III, Rule 44.1(d) (1989 Supp.).

A party is obstinate under Rule 44.-1(d) if it engages in actions which (a) make necessary litigation which could have been avoided, (b) prolongs the litigation unnecessarily, or (c) requires the other party to incur expenses in the pursuit of avoidable tasks. *Fernández Mariño v. San Juan Cement Co. Inc.*, 118 D.P.R. 713, 718–19 (1987); *De León López*, 931 F.2d at 126.

In ruling on Rubbermaid's motion for attorneys' fees and pre-judgment interest the district court stated:

We are not convinced that the defendant, Rubbermaid, Inc., acted rashly or contumaciously in defending from this Law 75 Dealer's Act suit. A reasonable reviewer of this record may conclude that the defendant's case presented plausible positions that merited contract termination. The fact that the jury elected otherwise is not indicative of contumacious conduct on the part of the defendant.

After reviewing the record, we agree with the district court in its conclusion that Rubbermaid did not act rashly or contumaciously in defending this suit. Rubbermaid presented evidence in support of its defense, indicating that Newell experienced a decline in sales of Rubbermaid products and failed to meet assigned sales objectives. Rubbermaid also presented evidence to the effect that Newell's policies as to the pricing of Rubbermaid products and Newell's sale of houseware plastics that were not manufactured by Rubbermaid adversely affected Rubbermaid's interests. The district court did not abuse its discretion in denying Newell's motion for attorneys' fees and pre-judgment interest.

*Affirmed.*