# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

97-2760

_____

<table>
<tr><td>Rebecca Ratliff and<br>Robert Ratliff,</td><td>*<br>*<br>*<br>*</td><td></td></tr>
<tr><td>Plaintiffs/Appellants,</td><td>*<br>*</td><td></td></tr>
<tr><td>v.</td><td>*<br>*</td><td>Appeal from the United States<br>District Court for the Eastern</td></tr>
<tr><td>Schiber Truck Company, Inc.</td><td>*<br>*</td><td>District of Missouri.</td></tr>
<tr><td>Defendant/Appellee.</td><td>*</td><td></td></tr>
</table>

_____

Submitted: February 12, 1998
Filed: August 5, 1998

_____

Before WOLLMAN and HANSEN, Circuit Judges, and DAVIS[1], District Judge.

DAVIS, District Judge.

Appellants Rebecca and Robert Ratliff are the surviving children of Jane Ratliff. Appellants commenced this action in the United States District Court, Eastern District of Missouri, alleging that Gene Baugh, an employee of Appellee Schiber Truck Company, Inc. ("Schiber"), wrongfully caused the death of their mother. On April 22,

_____

[1]The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation.

-1-

1997, a jury returned a verdict finding decedent Mrs. Ratliff 100% at fault and Schiber 0% at fault for the auto accident that caused her death. After the jury rendered its verdict, Appellants moved the district court for a new trial. By written order, the district court[2] considered the arguments of counsel and denied their motion for a new trial, finding the verdict was not against the clear weight of the evidence. The district court was also unpersuaded that a new trial was warranted because of asserted errors committed by the district court. Appellants now appeal the district court's denial of their motion for a new trial.

## I.

On July 28, 1995, Jane Ratliff was driving a car, traveling northbound in the right lane of Highway 61, a four lane highway in Pike County, Missouri. Her brother, Robert Selim, was a passenger in the car. Ahead of her in the right lane was a commercial tanker truck owned by Schiber and driven by one of its employees, Gene Baugh. As she approached the Schiber truck, Mrs. Ratliff entered into the left lane to pass it. Once she moved into the left lane, she observed another vehicle, in the same left lane, traveling southbound directly toward her. To avoid a head-on collision with the wrong way driver, Mrs. Ratliff attempted to return to the right lane. However, at that point, Mr. Baugh had stopped, or substantially slowed down, the truck in the right lane.[3] As a result, when Mrs. Ratliff attempted to return to the right lane, she collided with the truck, and suffered fatal injuries.

Appellants commenced this wrongful death action against Schiber, alleging that

---

[2]The Honorable E. Richard Webber, United States District Court, Eastern District of Missouri, Northern Division.

[3]There is a factual dispute as to whether Mr. Baugh actually had stopped the truck at the time of the accident, or whether the truck was still moving, albeit at only 5 m.p.h.

Schiber proximately caused or contributed to the death of Mrs. Ratliff, because of the negligence of Gene Baugh in stopping the truck in the right lane of the highway. In its defense, Appellee argued Mr. Baugh was not negligent, and that in fact the accident was caused as a result of Mrs. Ratliff's excessive speed. The matter was tried before a jury on April 21 and 22, 1997. The verdict form provided to the jury directed that the jury apportion the fault of the accident between Mrs. Ratliff and Mr. Baugh. The jury returned their verdict, finding Mrs. Ratliff 100% at fault.

## II.

A verdict will stand if it is supported by substantial evidence. Purchal v. Patterson, 762 F.2d 713, 715 (8th Cir. 1985). A new trial may be granted where the verdict is against the clear weight of the evidence or to prevent injustice. Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc., 466 F.2d 179, 186 (8th Cir. 1972) cert. denied Aalco Wrecking Co., Inc. v. Fireman's Fund Ins. Co., 410 U.S. 930 (1973). Courts cannot reweigh the evidence and set aside a jury verdict because the jury could have drawn different conclusions or inferences or because the court feels that other results are more reasonable. Id. (citing Tennant v. Peoria and Pekin Union Ry, 321 U.S. 29, 35 (1944)). Great deference is accorded the district court ruling on a motion for new trial, and will be reversed only upon a strong showing of abuse. Shaffer v. Wilkes, 65 F.3d 115, 118 (8th Cir. 1995).

At trial, Appellants offered the testimony of Ruth Freeman. Ms. Freeman is a truck driver that was also traveling northbound on Highway 61 on the date of the accident. Ms. Freeman testified that she was not too far ahead of Mr. Baugh and Mrs. Ratliff when she noticed a cream colored Ford Fairmont driven by an older woman traveling southbound in the left, northbound lane. Ms. Freeman maintained her speed and passed the wrong way vehicle. After the vehicle passed, she heard the accident and stopped to phone for the police and an ambulance.

Mrs. Ratliff's brother, Robert Selim, also testified at the trial as a witness for Appellants. Mr. Selim testified that he and his sister were traveling to Des Moines, Iowa for a family reunion. He stated that on the day of the accident, the weather was clear. Shortly before the accident, Mr. Selim testified that as their car approached the Schiber truck, Mrs. Ratliff moved into the left lane in order to pass the truck. He could not recall how fast his sister was driving at that time.

Appellants also called Bruce Becker, a trooper with the Missouri Highway Patrol, as a witness at trial. Trooper Becker was on duty the day of the accident and was called to the scene. Because Mrs. Ratliff's car had left skid marks, he and Corporal Murphy took measurements at the accident scene to determine placement and dimensions of skid marks, gouge marks and the final resting places of the Ratliff vehicle and the Schiber truck. Trooper Becker also testified that he spoke with Mr. Baugh at the scene, who stated that he had stopped his truck after seeing the wrong way driver. Trooper Becker also testified regarding Missouri statute section 304.019, which provides, in part, that "no person shall stop or suddenly decrease the speed or turn a vehicle from direct course or move right or left upon a roadway until that movement can be made with reasonable safety." Trooper Becker also testified that the speed limit at the scene was 40 m.p.h., as it was a construction zone.

Finally, Appellants' expert in the field of accident reconstruction, Francis Oldham, testified that in his opinion, the accident was primarily caused because Mr. Baugh stopped the trailer truck in response to the wrong way driver while remaining in the right lane of the highway. Mr. Oldham opined that if Mr. Baugh had continued to drive at 40 m.p.h., the accident would not have occurred because Mrs. Ratliff would not have had to pull out to pass the truck, or if she did pull out to pass, she would have seen the wrong way driver sooner and would have had more room to swerve and brake before coming into contact with the Schiber truck. Based upon the skid marks as measured by the state patrol, Mr. Oldham opined that Mrs. Ratliff was traveling between 46 and 53 m.p.h. when she began to skid and that the distance between the

wrong way vehicle and Mrs. Ratliff had to be at least 180 to 200 feet.

On cross-examination, Mr. Oldham admitted that although his report identified Mr. Baugh as negligent, the wrong way driver was also negligent and contributed to the accident. Mr. Oldham also admitted that his calculations established that Mrs. Ratliff was exceeding the speed limit at the time of the accident, and that her excessive speed "probably contributed to some degree" to the accident. Counsel for Appellee asked Mr. Oldham if he had read the report of Sergeant Gray, a Missouri Highway Patrol trooper, who had prepared the report on the basis of his investigation of the accident. At that point, counsel for Appellants asked to approach the bench, and there submitted his objection to any reference to Sergeant Gray's report on the basis that Sergeant Gray was not going to be called as a witness. The district court overruled the objection on the basis that Mr. Oldham had reviewed Sergeant Gray's report when Mr. Oldham wrote his report. Counsel for Appellees then asked Mr. Oldham the following:

> MR. PLEGGE: Are you aware that Sergeant Gray said in his report that in summary if Jane Ratliff's vehicle had been traveling at the posted speed limit of 40 miles per hour, the driver would have been able to slow down and move back into the driving lane missing vehicle number two and the wrong-way driver, are you aware of that opinion he gave?
>
> MR. OLDHAM: Yes.

In its case-in-chief, Appellee submitted the deposition testimony of the driver of another vehicle, Mr. Henke. Mr. Henke was traveling behind Ms. Ratliff when the accident occurred. Mr. Henke testified that he first observed Mrs. Ratliff's vehicle when she passed him in the left hand lane. Mr. Henke testified that he was traveling 58 m.p.h. on cruise control, and estimated that Mrs. Ratliff was traveling at approximately 65-70 m.p.h. when she passed him. He testified that after she passed him, he observed Mrs. Ratliff return to the right hand lane. Shortly thereafter, he observed the Schiber truck for the first time after he came over a small crest in the road. When he first noticed the Schiber truck, Mr. Henke testified that its flashers were on,

and that the truck was coming to a stop. At that time, Mrs. Ratliff was approximately 200 yards behind the truck, still traveling at a rate of 65-70 m.p.h., when she swung into the left lane to pass the truck. Mr. Henke testified that he also swung into the left lane to pass the Schiber truck and at that time, saw the wrong way driver. He also observed that the Schiber truck's door was open and that the driver was "waiving his hands trying to stop somebody." Mr. Henke further testified as follows:

> [Mrs. Ratliff] just turned right, and then just ran right into the left rear bumper of the truck. And that car bounced. I don't know how high, but it was higher than the tanker because I saw the complete under side of that vehicle in the air, and then bounced back about ten feet.

(Dep. Tr. 16-17). Mr. Henke testified that Mrs. Ratliff did not apply her brakes as she attempted to move back into the right hand lane, and was therefore traveling at approximately 65-70 m.p.h. when she hit the Schiber truck.

Appellee also called the driver of the Schiber truck, Gene Baugh, as a witness. Mr. Baugh testified that at the time of the accident, he was traveling in a construction zone, and that one or two miles into the construction zone he first saw the wrong way driver in the northbound left hand lane of Highway 61. He testified that he then looked into his rear-view mirror and saw Mrs. Ratliff traveling northbound in the left hand lane. He then put on his flashers, slowed the truck's speed, and waved his arms out of the window in an attempt to warn the driver of the vehicle traveling in the wrong lane, or the driver of the car behind him. Mr. Baugh stated that his flashers were on for approximately ten seconds before impact, and that the truck was moving slow, and probably less than five m.p.h.

Appellants argue that the verdict, apportioning 100% fault to Ms. Ratliff, is against the great weight of the evidence as the jury was presented with evidence which establishes three contributing factors to the accident - the wrong way vehicle, Mr. Baugh's negligence in slowing his truck in the right lane, and Ms. Ratliff's excessive

speed. Appellants argue that the evidence presented at trial supports a finding of negligence per se against Schiber, as Mr. Baugh violated Mo.Rev.Stat. § 304.019.

Section 304.019 provides as follows:

No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein.

(1) an operator or driver, when stopping, or when checking the speed of the operator's vehicle, if the movement of other vehicles may reasonably be affected by such checking of speed, shall extend such operator's arm at an angle below the horizontal so that the same may be seen in the rear of the vehicle;
***
(4) The signals herein required shall be given by means of the hand and arm or by a signal light or signal device in good mechanical condition . . . however, when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle then such signals shall be given by such light or device.

Every sudden and abrupt stop of an automobile is not, in and of itself, proof of negligence, "but only that such a stop will constitute negligence if there is no emergency shown to justify it, and it is made in disregard of the presence of vehicles following so closely behind that they may be unable to avoid a collision." Matthews v. Mound City Cab Co., 205 S.W.2d 243, 248 (Mo.App. 1947).

Appellee, in opposition to Appellants' claim of negligence on the part of Mr. Baugh, presented evidence and argument that Mrs. Ratliff was speeding, and that her excessive speed was the proximate cause of the accident. Where the speed of a driver prevented the driver from avoiding a collision, such speed may be the proximate cause of the accident. Marshall v. Bobbitt, 482 S.W.2d 439, 442 (Mo. 1972).

We find that substantial evidence exists to support the jury's finding that Mr. Baugh was not negligent. In support of their finding that Mr. Baugh did not violate Mo.Rev.Stat. § 304.019, evidence was presented establishing the existence of an emergency situation; namely an individual was driving south in the left, northbound lane of Highway 61. Evidence was also presented in the form of Mr. Henke's and Mr. Baugh's testimony that Mr. Baugh complied with Section 304.019 by slowing or stopping the truck, turning on the truck's flashers and by waving his arms out of the window in response to the emergency situation presented by the wrong way driver. Mr. Baugh, Trooper Becker and Mr. Henke all testified that there was no paved shoulder and from this evidence the jury could infer it was reasonable for Mr. Baugh to react as he did. Appellants argue that Appellee did not rebut the expert opinion of Mr. Oldham, but the jury was free to accept or reject the expert testimony of Mr. Oldham. Obviously, the jury rejected Mr. Oldham's opinion that Mr. Baugh was negligent.

There is also substantial evidence to support the jury's finding that Mrs. Ratliff was 100% negligent. Mr. Henke testified that Mrs. Ratliff was traveling at approximately 65-70 m.p.h. when she passed Mr. Henke's vehicle, and that he did not observe her slowing down as she passed the Schiber truck. Trooper Becker testified that the speed limit at the site of the accident was 40 m.p.h. Appellants' expert, Mr. Oldham, testified that he calculated Mrs. Ratliff's speed at the beginning of her skid mark to be 46-53 m.p.h. Mr. Oldham also admitted that Mrs. Ratliff's excessive speed contributed to the accident, and that if she had been driving within the speed limit, the accident would not have been the same.

From this evidence, a reasonable jury could conclude that Mr. Baugh complied with Missouri law when he slowed or stopped the truck in response to the wrong way driver, and that Mrs. Ratliff's speed was the proximate cause of the accident.

## III.

Appellants also assert as an additional basis for a new trial, that the district court erred in allowing counsel to cross-examine Mr. Oldham as to Sergeant Gray's report. Appellants argue that because Sergeant Gray did not testify at trial, discussion of the report he created was impermissible hearsay.

Generally, a trial court has broad discretion in the matter of regulating cross examination, and the exercise of such discretion will not be reversed absent an abuse of that discretion. Palmer v. Krueger, 897 F.2d 1529 (10th Cir. 1990). Once expert testimony has been admitted, the rules of evidence then place "the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination. Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 20 (1st Cir. 1994). It is thus the burden of opposing counsel to explore and expose any weaknesses in the underpinnings of the expert's opinion. Id. at 21 (citation omitted).

The district court allowed counsel to cross-examine Mr. Oldham with regard to Sergeant Gray's report because Mr. Oldham had read the report prior to preparing his own report. (Tr. 70). Appellee asserts a similar issue was addressed in Vodusek v. Bayliner Marine Corp., 71 F.3d 148 (4th Cir. 1995). In Vodusek, the trial court had allowed counsel to cross-examine a testifying expert as to another non-testifying expert's opinion. On appeal, the Fourth Circuit held that the trial court did not abuse its discretion in allowing such examination, even though the other expert's opinion was not placed into evidence, where the testifying expert had reviewed such other opinion and had rejected it. Id. at 157. Appellants attempt to distinguish Vodusek by arguing that Sergeant Gray was not an expert, nor could he be qualified as one, and that Mr. Oldham did not testify that he relied on or rejected Sergeant Gray's opinions.

Appellants' attempt to distinguish Vodusek is not persuasive. Whether or not

Sergeant Gray was an expert is not the relevant inquiry. What is relevant is whether Sergeant Gray's report is a document of the type reasonably relied upon by accident reconstructionists in forming their opinions. Fed.R.Evid. 703. Given the fact that Mr. Oldham reviewed both Sergeant Gray's and Trooper Becker's reports, it appears such documents are of the type generally relied upon. In addition, while Mr. Oldham did not specifically testify that he rejected Sergeant Gray's conclusion, such testimony was not necessary. Clearly, Mr. Oldham rejected Sergeant Gray's conclusion that Mrs. Ratliff 's negligence caused the accident. Although counsel, on cross-examination, did not ask Mr. Oldham why he rejected Sergeant Gray's opinion, Mr. Oldham was given the opportunity to do so on re-direct. Trial Tr. 71-72.

We believe that the district court did not err by permitting counsel to cross-examine Mr. Oldham concerning the report of Sergeant Gray. Mr. Oldham admitted that he had read the report prior to submitting his own report. Therefore counsel was free to cross-examine the expert as to all documents he reviewed in establishing his opinion. Newell Puerto Rico, Ltd. 20 F.3d at 21.

## IV.

Appellants also argue they are entitled to a new trial because the district court limited counsel to only twenty minutes for voir dire. Such limitation, Appellants argue, prevented them from effectively and intelligently exercising their peremptory challenges and challenges for cause.

Voir dire was initially conducted by the district court, asking the entire panel the following questions: whether anyone knew the parties or their counsel, whether anyone knew any of the potential witnesses, whether anyone had served previously on a jury, whether they or any relatives had been involved in litigation as a party to a lawsuit, whether any life experience would prevent anyone from being fair to the parties, whether anyone had any prejudice against a plaintiff seeking money damages, whether

anyone had a problem with the burden of proof as a preponderance of the evidence, and whether anyone would hold it against an attorney for making an objection. The district court then allowed counsel for the parties twenty minutes each to conduct further voir dire.

Courts have broad discretion in determining what questions will be asked during voir dire. Labbee v. Roadway Express, Inc., 469 F.2d 169, 172 (8th Cir. 1972). "However, the substance of voir dire examination is subject to the right of the parties to have an impartial jury and the questioning must in general attempt to preserve that right." Id. (citation omitted). The record establishes no objection to the way in which voir dire was conducted. Absent an objection, the reviewing court will only review for plain error to determine if the limitation was so prejudicial as to cause a miscarriage of justice. Fleming v. Harris, 39 F.3d 905, 908 (8th Cir. 1994). "Under plain error review, an error not identified by a contemporaneous objection is grounds for reversal only if the error prejudices the substantial rights of the [Appellants] and would result in a miscarriage of justice if left uncorrected." Id. Given the questions asked of the jury panel by the district court, and the questions asked by counsel, we find no plain error.

## V.

At trial, the district court precluded any opinion testimony from Mr. Oldham that Mr. Baugh was negligent because he did not leave the roadway and pull off on to the shoulder. In their offer of proof to the district court, Appellants provided that if allowed to testify, Mr. Oldham would state that had Mr. Baugh "moved his vehicle to the right even as little as 5 feet and certainly if he had gotten his vehicle completely off the right lane . . . the accident could have been avoided and, yes, it would have been negligence for the tractor trailer driver to have failed to have done that." (Tr. 5). The basis for the district court's ruling was that under Missouri law there is no such duty. (Tr. 4-5). Appellants argue that Missouri law does indeed impose such a duty and refers to Missouri model instruction 17.04 - which provides that a motorist has a duty

-11-

to swerve, if there was enough time to do so to avoid an accident.

Missouri law does impose a duty on motorists to "stop, swerve, slacken speed or sound a warning when he or she knows or by the exercise of the highest degree of care could have known that there was a reasonable likelihood of collision in sufficient time to take such preventative measures." Hollis v. Blevins, 927 S.W.2d 558, 564 (Mo. Ct. App. 1996). The duty to swerve arises when a driver knew or should have known the collision would likely occur. Id.

Appellee does not dispute that, under certain circumstances, a driver has a duty to swerve to avoid a collision. Appellee argues, however, that in this case, the issue is not whether Mr. Baugh could have swerved to avoid the accident between Mrs. Ratliff and the truck. Rather, the issue is whether Mr. Baugh should have driven off of the highway onto the shoulder to either avoid a collision between the truck and Mrs. Ratliff or a collision between the wrong way driver and Mrs. Ratliff. It is Appellee's position that driving onto the shoulder does not constitute "swerving."

"Swerve" is defined as: [t]o turn aside abruptly from a straight or direct course. WEBSTER'S II, NEW RIVERSIDE DICTIONARY (Office Ed. 1984). Consistent with this definition, Missouri case law on the duty to swerve addresses factual situations in which the evasive conduct contemplated is an abrupt change of direction by one party to an accident. In Hollis, an accident occurred when a driver in the eastbound lane abruptly entered a lane of westbound traffic, and was hit by a car traveling westbound. Evidence at trial established that at the time the eastbound driver swerved into the westbound lane, the two cars were approximately four car lengths apart. Id. at 565. One of the issues at trial was whether the westbound driver had the time and ability to swerve, to avoid the accident. These facts suggests quick, abrupt evasive action would have been necessary to avoid collision. Similarly, in Morgan v. Toomey, 719 S.W.2d 129 (Mo. Ct. App. 1986), the defendant was driving through a parking lot when he hit plaintiff, who was standing next to a car. Plaintiff had argued

that defendant had a duty to swerve to avoid the accident, and his failure to swerve was negligent. The evidence at trial established that at the time it became apparent that the plaintiff would be hit by defendant's car, there was only two feet separating them. Id. at 137. These facts also suggest that the evasive action considered had to have been quick and abrupt.

Hollis and Morgan also illustrate that the duty to swerve is triggered only where the driver perceives that swerving will assist him or her in avoiding a collision, not to assist others from colliding.

In this case, the Appellants argue that Mr. Baugh should have moved the truck over five feet or onto the shoulder upon seeing the wrong way driver and Mrs. Ratliff on a potential collision course. We agree that these facts do not trigger the duty to swerve on behalf of Mr. Baugh. Accordingly, we find that the district court did not abuse his discretion in precluding Mr. Oldham from testifying that Mr. Baugh had a duty to drive onto the shoulder to avoid a collision between the wrong way driver and Mrs. Ratliff.

## VI.

Finally, Appellants argue a new trial is warranted because the district court erred in allowing counsel for Appellee, during his closing argument, to inject his personal opinion as to the outcome of the case, improperly raised an insurance question regarding the unidentified wrong way driver, and argued that Appellants had a pecuniary motive for bringing the action against Appellee. Appellants argue such statements were prejudicial and warrant a new trial.

"Trial courts are invested with broad discretion in controlling closing arguments, and we will reverse only if the trial court abused that discretion." United States v. Macklin, 104 F.3d 1046, 1049 (8th Cir. 1996)(citation omitted). Where an issue is not

properly preserved on appeal, we will review only for plain error. <u>Dillon v. Nissan Motor Co., Ltd.</u>, 986 F.2d 263, 269 (8th Cir. 1993).

The challenged portion of the closing argument is as follows:

MR. PLEGGE:     Secondly, we have the wrong way driver. There's no question that driver was going the wrong way. Mr. Oldham told you there's no doubt that the driver was negligent and that negligence contributed to cause the accident. So we have two drivers who admittedly were negligent and they sue Mr. Baugh who in my opinion I think the evidence supports was the only driver that didn't do anything wrong.

Now ask yourselves, "Why did they do this?" Well, I think the evidence is clear because you can't sue a driver who you don't know. You can't sue the unidentified driver. You can't make any money doing that. You can't sue.

MR. MARKS:       Your Honor, this case does not involve the unidentified driver and there are no instructions concerning that and this is improper argument.

THE COURT:       Overruled. It is argument. Overruled.

(Tr. 149).

Counsel are given wide latitude in arguing inferences from the evidence presented. <u>Titsworth v. Powell</u>, 776 S.W.2d 416, 422 (Mo. Ct. App. 1989). At the same time, counsel must not "go beyond the evidence and issues drawn by the instructions or urge prejudicial matters or a claim or a defense which the evidence and issues drawn by the instructions do not justify . . ." <u>Id.</u> "In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record rather than in isolation." <u>Id.</u>

Appellants did not object, at trial, to the statement in which counsel injected his opinion as to Mr. Baugh's negligence, therefore the issue can only be reviewed for plain error. Dillon, 986 F.2d at 269. In this case, the evidence supports the argument that Mr. Baugh was not negligent. We therefore find no plain error in counsel injecting his personal opinion that Mr. Baugh was not negligent in this case.

We also find that the trial court did not abuse its discretion in permitting counsel to argue that one cannot sue an unidentified driver. While counsel's statements may not have been entirely correct[4], it was argument that was supported by the record. In addition, the statement did not prejudice Appellants because their own expert prepared a report opining that only Mr. Baugh was negligent, but the expert testified on cross-examination that the negligence of the wrong way driver was "self-evident." (Tr. 59). See Shelley v. St. Louis Public Service Co., 279 S.W.2d 182 (Mo. App. 1955)(argument in defendant's closing that it was unfair not to sue one driver involved in accident, was not prejudicial where plaintiff repeatedly referred to the absent driver as being 'probably' negligent, and a 'no good so-and-so').

Finally, we find the district court did not abuse its discretion in allowing counsel for Appellee to argue that money was the motive for suing Schiber. Improper statements that are addressed by the objecting party, which limit or eliminate any prejudice, will not justify reversal. Throckmorton v. St. Louis-San Francisco Ry Co., 179 F.2d 165, 170 (8th Cir.) cert. denied 339 U.S. 944 (1950). Appellants addressed counsel's statements regarding any pecuniary motive in their rebuttal. (Tr. 161) .

---

[4]Appellants assert that they can, and have, sought uninsured motorist coverage. So, while there is truth to the fact that you cannot sue an unidentified driver, it is not correct to state that "you can't get money" from an unidentified driver.

The order of the district court denying Appellants' motion for a new trial is affirmed.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.