# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1944

_____

| | | |
|---|---|---|
| Tina Brennan, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Reinhart Institutional Foods; | * | |
| | * | |
| Defendant-Appellant, | * | |
| | * | |
| Bunn-O-Matic, Inc., | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: February 16, 2000

Filed: April 26, 2000

_____

Before McMILLIAN, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

LAY, Circuit Judge.

Reinhart Institutional Foods (Reinhart) appeals the district court's admission of hearsay through the expert testimony of a vocational rehabilitation counselor. Because we feel the decision to admit the evidence is supported by Federal Rule of Evidence 703, we affirm.

# I. Facts and Background

Tina Brennan sued for personal injury arising from an electric shock she received from a coffee maker while working as a waitress. She brought suit against Reinhart, as Reinhart had supplied the coffee machine to her employer and a Reinhart employee installed it. She allegedly developed fibromyalgia from the resulting shock. During the course of the trial, the district court[1] allowed Brennan's vocational rehabilitation counselor, Rick Ostrander, to mention hearsay statements by Brennan's physicians in expressing his opinion as to her probable loss of employability and earning capacity due to her injuries.

During the course of Ostrander's testimony, he stated Dr. P. James Eckhoff, Jr., a rheumatologist, had earlier reported Brennan "as having a permanent partial impairment of eleven percent of the whole person." (Tr. at 323.) Ostrander also noted that Brennan had been treated by Dr. Myung J. Cho, a specialist in physical medicine and rehabilitation, and she was independently evaluated by Dr. Chris Tountas. Reinhart objected to Ostrander's statements as referring to hearsay that was not in evidence and not subject to cross-examination. The district court overruled the objection on the grounds that an expert can rely on matters not in evidence in forming an opinion. Ostrander then explained that Dr. Eckhoff's and Dr. Cho's reports that Brennan suffered a permanent partial impairment of eleven percent were "significant to [him] as a vocational rehabilitation specialist because [they] indicate[ ] a medical opinion of a permanent condition; one that is not likely to get substantially better or worse in the future." (Tr. at 324.) Additionally, Ostrander referred in his opinion to a functional capacities evaluation administered to Brennan by an occupational therapist. Reinhart objected on the same grounds, and, again, the district court overruled the objection. The jury found for Brennan, and she received a jury verdict of $256,000.

_____

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota, presiding.

## II. Discussion

The gravamen of this appeal is that the reports indicating a permanent partial impairment of eleven percent and the results of Brennan's functional capacities assessment were not otherwise mentioned during the trial. Dr. Eckhoff and Dr. Patricia Malters, a physician of internal medicine who still treated Brennan at the time of trial, did not appear at trial but gave testimony by deposition. Although testimony was given regarding Brennan's permanent disability by these experts, it does not appear either testified as to the eleven percent evaluation. Ostrander also referred to Dr. Cho's medical report; however, Dr. Cho did not testify by deposition or otherwise. Thus, it is argued that the district court abused its discretion because it allowed the admission of hearsay medical opinions presented solely through the testimony of Ostrander, the vocational counselor.

The sole issue on appeal involves the proper application of Federal Rule of Evidence 703. It reads:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We have visited this problem on prior occasions. We have explained that "an expert may rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field." Arkwright Mutual Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1182 (8th Cir. 1997) (citing Fed. R. Evid. 703; South Cent. Petroleum, Inc. v. Long Bros. Oil Co., 974 F.2d 1015, 1019 (8th Cir. 1992)). We have also noted that "[o]nce expert testimony has been admitted, the rules of evidence then place 'the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the

-3-

shoulders of opposing counsel's cross-examination.'" Ratliff v. Schiber Truck Co., 150 F.3d 949, 955 (8th Cir. 1998) (quoting Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 20 (1st Cir. 1994)). It is, therefore, the "burden of opposing counsel to explore and expose any weaknesses in the underpinnings of the expert's opinion." Ratliff at 955 (citing Newell Puerto Rico, 20 F.3d at 21). Reinhart relies on authority stating it to be error to allow into evidence hearsay statements and medical reports as substantive evidence to prove the fact asserted. See, e.g., Boone v. Moore, 980 F.2d 539 (8th Cir. 1992).

In facing this apparent contradiction between Fed. R. Evid. 703 and the inadmissibility of hearsay reports, this court has reconciled the issue by allowing an expert to testify about facts and data outside of the record for the limited purpose of exposing the factual basis of the expert's opinion. Effective cross-examination can then highlight the weaknesses in the expert's opinion. Obviously, it is helpful when trial courts instruct juries as to the limited applicability of the hearsay evidence by informing the jury that the hearsay is inadmissible as substantive evidence to prove the truth of the fact asserted. See South Cent. Petroleum, 974 F.2d at 1019. In the present case, upon overruling Reinhart's hearsay objection, the district court explained it was overruled "because an expert can rely upon matters that are not in evidence in forming an opinion." (Tr. at 323.) This statement is certainly sufficient under the standard set forth in South Central Petroleum to make the jury aware of the rule. Moreover, our perusal of the record shows that counsel conducted a thorough cross-examination of Ostrander concerning the opinions of the various doctors.[2] The

---

[2]For example, during cross-examination defense counsel questioned Ostrander about Dr. Eckhoff's impairment rating:

Q. Now, you haven't made any differentiation in your analysis between her carpal tunnel syndrome and her fibromyalgia condition, have you?

A. That's correct.

Q. But the medical testimony before this jury from all of the physicians who testified on it, I guess so far we've had Doctor Malters, Doctor Eckhoff, both of them have said that the carpal tunnel syndrome is not related to the electric shock incident, have they not?

A. That's my understanding and because of that I took a look at its impact on my evaluation and it was negligible impact. They've identified a mild carpal tunnel. The functional assessment only restricts her from high-speed assembly. Out of the 48 occupational titles that I looked at only two would have been potentially excluded by the carpal tunnel alone, so it has a negligible impact. That's why I didn't differentiate that.

Q. Well, there isn't any testimony from Doctor Malters of any permanent impairment, is there?

A. No.

Q. And there isn't any testimony from Doctor Eckhoff of any permanent impairment either, is there?

A. Well, it's in his report.

Q. There hasn't been any testimony. You read the deposition?

A. Right. It wasn't in his deposition; that's correct.

Q. All right. The report or not the report but rather the testimony of Doctor Tountas certainly isn't finding any permanent disability or any permaanent [sic] impairment or anatomical impairment, is there?

A. That's correct.

Q. In fact, his opinions are just the opposite; that he can't find an injury that he identifies with the electrical incident at all.

A. That's correct.

Q. Okay. And none of the physicians are finding any burn injury or any tissue damage or anything of that sort?

A. That's true.

(Tr. at 351-52.)

Dr. Eckhoff's deposition, used at trial, was somewhat more equivocal as to Brennan's permanent injury. He did testify however:

Q. Is the condition of fibromyalgia curable?

A. I don't ever speak to patients of cure. I speak to them of management. Cure implies to me that you perform whatever treatment is recommended, that the condition goes away and does not return.

Fibromyalgia tends to fluctuate in severity of symptoms over time. With good management, patients tend to function well. They still have pain; they have less pain. They have more good days and less bad days. Certain variety of stimuli will expect – will be expected to aggravate their symptoms.

Q. So would it be accurate to say that a person with fibromyalgia has a permanent condition?

A. I think that oversimplifies the state. They have a condition which would be expected to fluctuate in symptoms over time. It may not go completely away. They may have it, as you say, permanently.

However, this will – one must remember that this will fluctuate from higher to lower levels of severity, or perhaps be asymptomatic at different times.

reports at issue from Dr. Eckhoff were available to Reinhart during Ostrander's testimony and certainly could have been utilized to rebut or impeach if necessary. Furthermore, Ostrander testified that the eleven percent evaluation of the experts was meaningless to him and did not enter into his evaluation of vocational loss. We mention these factors as evidence that defense counsel had available in the examination of Ostrander.

On appeal, defense counsel points out that Brennan argued from the hearsay evaluations during closing argument. We take note there was no objection to this argument and our reading of the record discloses that the challenged argument was in conjunction with Ostrander's opinion relating to Brennan's earning capacity.

### III. Conclusion

A trial judge is in a unique position to judge the alleged prejudicial effect of this kind of testimony. Judge Piersol wrote a thorough opinion in denying Reinhart's motion for a new trial, reconciling Fed. R. Evid. 703 and the rule against hearsay. Based on this court's prior cases and the record we have reviewed, we cannot say that he abused his discretion in admitting Ostrander's testimony.

Judgment affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

(Dep. at 20-21.)