**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment [Document # 211] is **GRANTED.**

**James P. THURMAN, Plaintiff,**

v.

**MISSOURI GAS ENERGY, a division of Southern Union Company, Defendant.**

No. 99–0692–CV–W–3–ECF.

United States District Court,
W.D. Missouri,
Western Division.

July 31, 2000.

---

**31.** In light of the fact that plaintiffs are unable to establish that the product at issue in this case caused the injury in question in the absence of expert witnesses, the Court has not included a discussion of defendant's claims for partial summary judgment based upon the learned intermediary theory and on plaintiffs' claim for punitive damages. The Court has considered such arguments, but no discussion is indicated in light of the fact that plaintiffs are unable to establish causation in this case.

A. Howard Chamberlin, Law Offices of A. Howard Chamberlin, Lee's Summit, MO, Edward M. Boyle, Overland Park, KS, for James Thurman, plaintiff.

Louis A. Huber, III, Stacey L. McLey, Schlee, Huber, McMullen & Krause, Kansas City, MO, for Missouri Gas Energy, a division of Southern Union Company, defendant.

## ORDER

SMITH, District Judge.

Pending before the Court is Plaintiff's Motion to Exclude Testimony of James B. Bushman, P.E. (Doc. # 273); Plaintiff's Motion to Exclude Testimony of Dr. John F. Kiefner, Ph.D., P.E. (Doc. # 277); Plaintiff's Motion to Exclude Portions of the Testimony of Dr. Jacobus on *Daubert* Principles (Doc. # 281); Defendant's Motion to Exclude Douglas Buchan (Doc.

#285); Defendant's Motion to Exclude Testimony of Douglas Chisholm (Doc. #286); Defendant's Motion to Exclude Testimony of Ralph Stephens (Doc. #287); and Defendant's Motion to Exclude Testimony of Robert Stubbs (Doc. #288). The Court held a hearing on July 18, 2000, to hear testimony about each expert in dispute.

All of these motions object to the respective testimony of each expert based upon the application of *Daubert* and *Kumho Tire* standards. Since each expert's report addresses different issues in the pending litigation, the Court will consider each motion separately.

### 1. Background

Plaintiff brings this action claiming that Defendant is responsible for his physical and mental injuries resulting from a July 25, 1997, fire and gas explosion in a telecommunication vault in which the Plaintiff was working. Defendant, Missouri Gas Energy ("MGE"), is a division of Southern Union Company; and is incorporated in the State of Delaware with its principal place of business in the State of Texas.

The gas involved in the explosion belonged to MGE. The escape of the natural gas was caused by an unknown structural failure in an underground pipeline better known as the "Liberty Lateral" buried eighteen and one-half feet below street level. The specific cause of the failure cannot be determined since Defendant did not excavate the pipeline upon the recommendation of the Missouri Public Service Commission.

### 2. Statement of Law

Rule 702 of the Federal Rules of Evidence provides the following:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under federal law, engineering expert testimony is to be held to the same standards of reliability and relevance as scientific expert testimony. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 139, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Jaurequi v. Carter Manufacturing Co.*, 173 F.3d 1076, 1083 (8th Cir.1999). "Relevance means there must be a valid scientific connection to the pertinent inquiry in the case." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993) (internal quotations omitted). "Reliability means the evidence must be based upon scientific knowledge, i.e., grounded in the methods and procedures of science and must represent more than a subjective belief or an unsupported speculation." *Id.* at 2795. The "trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Kumho*, 526 U.S. at 143, 119 S.Ct. 1167 (quoting *Daubert*). The proponent of the expert evidence bears the burden of proving by a preponderance of the evidence that the conditions of admissibility exist. *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786.

The Eighth Circuit has established that when engineering experts are brought in to offer an opinion, the district court does not err in looking to *Daubert* for guidance as to whether such testimony should be admitted or excluded. *Jaurequi*, 173 F.3d at 1083; *cf. Becker v. Nat'l Health Products, Inc.*, 896 F.Supp. 100, 103 (N.D.N.Y.1995) (stating that the *Daubert* factors are not the complete answer for the court's gatekeeping role when deciding the admissibility of engineering evidence). *Daubert* reliability factors should be relied upon only to the extent that they are relevant.[1] *Jaurequi, 173 F.3d at 1083;*

---

1. The suggested *Daubert* factors to be considered by a trial court when establishing the reliability of evidence are as follows: 1) whether the underlying theory or technique can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) whether the technique has a known or knowable rate of error; 4) whether the theory or technique is

*Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir.1995). Indeed, the Supreme Court stated that

> [n]ot every guidepost outlined in Daubert will necessarily apply to expert testimony based on engineering principles and practical experience, . . . the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue is no less important.

*Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786 (internal quotations omitted).

### 3. The Motions

As a threshold matter, the Court concludes all experts, both Plaintiff's and Defendant's are "qualified" to offer certain opinions pursuant to F.R.E. 702. Each possesses scientific, technical, or other specialized knowledge which should assist the jury in understanding the evidence or in determining a fact in issue. The Court believes that these witnesses are qualified as experts by knowledge, skill, experience, training, or education and may testify thereto in the form of certain opinions as specifically limited in the following discussion.

### A. Plaintiff's Motion to Exclude Testimony of James B. Bushman [2]

Bushman makes two primary conclusions. Overall, Bushman opines that the failure of the Liberty Lateral pipeline was most likely caused by some unforeseeable mechanical failure of the pipe and not corrosion; and MGE was meeting the state and federal requirements and industry recommendations for corrosion control.

*Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968 (8th Cir.1995) held that an expert must rule out the other possible causes, or the expert's opinion is inadmis-

sible. *Hose* states that "in determining the cause of a person's injuries, it is relevant that other possible sources of his injuries, argued for by defense counsel, have been ruled out by his treating physicians. Indeed, ruling out alternative explanations for injuries is a valid medical method." *Hose*, 70 F.3d at 973 (citing *McCullock v. H.B. Fuller, Inc.*, 61 F.3d 1038, 1043–44 (2d Cir.1995) as support). But *Hose* does not say an expert must eliminate alternative explanations, rather, it says that doing so is a proper way to arrive at an admissible opinion.

However, if the expert can explain why his opinion remains reliable then objections to the opinion can be overcome. *Westberry v. Gummi AB*, 178 F.3d 257, 265 (4th Cir.1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 764–65 (3rd Cir.1994)) (stating that recognizing failure to account for all possible causes does not render expert opinion inadmissible; only if expert utterly fails to consider alternative causes or fails to explain why the opinion remains sound in light of alternative causes is an expert's opinion unreliable for failure to account for all potential causes).

■ Bushman has expressed his ultimate conclusion, but has not stated how he reached it. In other words, in concluding that "unforeseeable mechanical failure was the cause" Bushman has not identified how he arrived at that positive conclusion or, alternatively, how he eliminated all other possible causes (including corrosion). In order to be able to state an opinion of the cause of the pipeline's failure, Bushman must be able to offer a credible explanation as to why he supports one theory of failure over another. Since the pipeline was never excavated and physically examined, Bushman (as well as others) cannot explain how or why he arrived at his ultimate opinion.

---

generally accepted in the relevant community. *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786.

**2.** The expert opinion offered by Bushman is the subject of Plaintiff's separate motion for sanctions and Plaintiff's *Daubert* motion. Af-

ter the parties complete their briefing of Magistrate Judge Robert Larsen's Report and Recommendation, the Court will issue an order on whether Mr. Bushman will be allowed to testify.

Bushman may testify as to generally accepted engineering principles and his knowledge about pipelines. He may testify regarding the historical operations of the pipeline, the typical causes of failure in a pipeline as it ages, the historical frequency of these typical causes, why he believes some of the typical causes did not occur here, the facts which he believes preclude corrosion as a cause and the importance of excavation in determining pipeline failure, among other topics. All are relevant to the case. In short, he will be permitted to testify as to the basis for his opinion but will not be permitted to state the opinion.

Plaintiff objects to Bushman's second opinion because Bushman's opinion is based upon his observations concerning the entire 7 ½ mile length of pipeline. This conflicts with an apparent oral agreement between the parties to limit the pipeline area subject to discovery. In addition, Plaintiff objects because Bushman's opinion considers information (which Plaintiff claims is inadmissible heresay) provided by Brad Matthews, MGE's corrosion manager, who died before his deposition could be completed. Finally, Plaintiff also objects to Bushman's testimony because MGE supplied leak records to Bushman which it had previously denied were in existence. Many of Plaintiff's objections here are repeated in his Motion for Sanctions referenced in footnote 2.

Plaintiff's argument that MGE relied on evidence and documentation outside of the agreed timeline and geographic restrictions will not be addressed in this order. The Court has taken Judge Larsen's Report and Recommendation under advisement. An order will be shortly forthcoming.

Plaintiff fails to provide any citations in support of his second argument that Bushman's opinion should be excluded for relying on hearsay. However, the law clearly states that hearsay may be used by experts in the preparation of their opinions. F.R.E. 703 states

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In *Arkwright Mutual Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir.1997), the court stated "an expert may rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field." The Eighth Circuit also states that "[o]nce expert testimony has been admitted, the rules of evidence then place 'the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination.'" *Ratliff v. Schiber Truck Co.*, 150 F.3d 949, 955 (8th Cir.1998) (quoting *Newell Puerto Rico, Ltd. v. Rubbermaid, Inc.*, 20 F.3d 15, 20 (1st Cir.1994)). The Eighth Circuit reconciles the contradiction between F.R.E. 703 and the inadmissibility of hearsay reports by allowing an expert to testify about facts and data outside of the record for the limited purpose of exposing the factual basis of the expert's opinion. Opposing counsel may then cross-examine the expert and reveal any weaknesses in the expert's opinion. *Brennan v. Reinhart Institutional Foods*, 211 F.3d 449, 451 (8th Cir.2000).

■ Based upon the law in this circuit, it makes little difference that Bushman relied on Matthews' hearsay statements even though Matthews died before Plaintiff could complete his deposition. Plaintiff has the opportunity to cross-examine Bushman at trial if his opinion is proffered.

Therefore, Bushman may not testify about the ultimate cause of the pipeline leak because that conclusion is unreliable and does not offer any assistance to the jury in its determination. At this point, Bushman may testify about the corrosion

control system as hereinbefore limited, pending the Court's order on Plaintiff's sanction motions.

B. Plaintiff's Motion to Exclude Testimony of John F. Kiefner, Ph.D.

Plaintiff opposes the testimony of Dr. Kiefner. Dr. Kiefner proffers that: 1) there are possible causes of the leak in the Liberty Lateral other than corrosion; and 2) that the pipeline was not subjected to excess downward stress. Kiefner made an analysis on the circumferential stresses imposed on an 8-inch pipeline buried at a 19-foot depth made of unknown steel materials. As contrasted to Douglas C. Chisholm, Plaintiff's expert, Kiefner uses a stress calculation method other than the Spangler–Martsen ("Spangler") formula (as discussed in section E) and makes the analysis that the pipeline was under significantly less stress than as opined by Chisholm. Kiefner also used the Spangler formula to compute the same stress levels as Chisholm. However, Kiefner's opinion is that the Spangler formula is only used for stress analysis when designing a new pipeline. The formula favored by Kiefner accounts for beneficial lateral restraint provided by compacted soil on the sides of the pipe which he argues is similar to the conditions of the Liberty Lateral.

Which formula should have been chosen is a decision to be made by the jury. In *DiCarlo v. Keller Ladders*, 211 F.3d 465, 467 (8th Cir.2000), the Eighth Circuit states that it is the jury's responsibility to compare two competing methodologies offered by experts-not the District Court Judge. The clear trend of authority is for the jury to hear testimony and evaluate the facts bearing on the witnesses' testimony which should be brought out on cross-examination. *Id.* (citing 3 Weinstein Federal Evidence § 601.03[2][a] at 601–13, Joseph M. McLaughlin ed., 2d edition 2000). Each side will have the opportunity to examine and cross-examine the witnesses on their reasoning for choosing a particular formula. The ultimate decision on which is correct will be made by the jury.

Therefore, the Court finds that Kiefner may testify about the generally accepted knowledge of pipeline engineers. This knowledge may include typical causes of pipeline failures, the historical chronology of the Liberty Lateral's operation and maintenance, and other relevant topics. However, the Court holds that any conclusion or opinion which offers the cause of the pipeline's failure shall not be admitted. Since the pipeline was not excavated after the accident, no expert can offer a reliable opinion on the issue of ultimate causation so as to assist the jury in fixing the ultimate cause of the accident.

C. Plaintiff's Motion to Exclude Portions of Dr. Jacobus's Testimony

Plaintiff argues to several portions of Jacobus' report as unreliable and should be excluded. Specifically, Plaintiff objects to the following opinions:

1) the gas odorant was not completely adsorbed prior to entry in the manhole;

2) the introduction of natural gas into the incident manhole most probably began shortly before the incident date or time;

3) the cause of the leak in the Liberty Lateral was not determined and there is no proof of corrosion or stress fracture of the pipeline;

4) the place of the explosion, the Southwestern Bell manhole, is a confined space;

5) entry into the Southwestern Bell manhole should not have been attempted before atmospheric testing of the manhole; and

6) if Plaintiff had followed the minimal OSHA requirements prior to entry into the incident manhole, the incident would not have occurred.

1. Gas odorant was not completely adsorbed prior to entry in the manhole

Plaintiff objects to Jacobus's opinion that the gas odorant was not completely

adsorbed prior to entry into the manhole on the basis that it is not reliable. Plaintiff states that six eyewitnesses claim not to have smelled gas before the explosion and the original laboratory tests dispute Jacobus's conclusion. Therefore, it should be excluded because of the factual contradictions.

MGE contends that Plaintiff's argument does not necessarily follow from the facts presented. MGE's theory presents several possible scenarios that would negate the fact that the gas did not contain odorant. For example, MGE claims it is possible that the leak did not occur until after Plaintiff's co-workers left the manhole and Plaintiff entered the manhole all alone. MGE further claims that since Plaintiff is a smoker with a decreased sense of smell, he cannot verify that no odorant was present.

MGE states that Jacobus's opinion that the odorant was not adsorbed is based on his expertise regarding the properties of natural gas, post-accident testing, and testimony of the witnesses in this case. It is offered under F.R.E. 104 to refute Plaintiff's experts' opinions that the gas in the manhole was not detectable because it had been absorbed by the soil.

■ This is a battle between the parties' experts created by reliance upon diverse factual supposition. The dispute should be decided by the jury on the basis of credibility versus reliability. The testimony of Dr. Jacobus will be admitted on this issue.

2. Introduction of natural gas into the manhole began shortly before the incident date

Plaintiff objects to Jacobus's opinion since it is based on the assumption that there was no ventilation in the manhole prior to or at the time of the explosion. Again, Plaintiff points out that eyewitnesses testify that the manhole was ventilated prior to the explosion. Plaintiff offers Douglas Buchan's and Chisholm's opinions for the theory that if MGE had checked the manholes with gas detection equipment, the leak would have been de-

tected and the accident would not have occurred. Therefore, it should be excluded because of the factual contradictions.

MGE offers Jacobus's opinion on the basis that competent evidence exists to prove that the manhole was not being properly ventilated at the time of the accident. MGE states that an employee of Southwestern Bell testified that the ventilation hose was examined after the accident and found no indication of burn marks which would indicate that ventilation was not occurring at the instant of ignition. Jacobus opines that if the manhole had been ventilated at the time of the accident, a combustible mixture of gas would not have been present. Finally, MGE offers the fact that the gas concentration in the manhole went from 0% after having been burned in the fire to 20% soon after the accident indicates that there was a sudden and recent leak.

MGE offers Jacobus's opinion based on the evidence and claims that it is reliable. It is offered to challenge Buchan's and Chisholm's opinions that the leak occurred before the accident and could have been detected during its annual inspection.

■ Again, these are expert opinions based upon different factual assumptions. The outcome should be determined by the jury on the basis of credibility versus reliability. Dr. Jacobus will be permitted to testify on this issue.

3. Opinions 3 and 4

Plaintiff objects to Jacobus's opinion that there is no proof of corrosion or stress fracture of the pipeline. Plaintiff claims Jacobus is not qualified to offer this opinion since he has no experience in corrosion control or cathodic protection and is therefore, unreliable. Defendant does not offer an argument in response to Plaintiff's claim.

■ Jacobus cannot offer an ultimate opinion of what caused the failure of the pipeline. As is the case with Bushman, Jacobus did not explain how he arrived at

his opinion nor did he offer reasoning on how he eliminated other causes. He may testify regarding the historical corrosion control systems in place on the pipeline, the typical causes of failure in a pipeline as it ages, why he believes some of the typical causes did not occur here, and the facts which he believes support his opinion. In short, he will be permitted to testify as to the basis for his opinion but will not be permitted to state the opinion.

Plaintiff objects to Jacobus's opinion that the manhole is a confined space and that Plaintiff violated OSHA standards in entering the manhole without determining if a hazardous condition existed. Plaintiff claims that the opinion is unreliable because it is legally and factually incorrect. Defendant does not offer an argument in response to Plaintiff's claim.

The Court holds that Jacobus can define "confined space" under federal regulations. Jacobus can testify as to what ventilation procedures a telecommunications worker should follow in entering a manhole. However, Jacobus cannot make general conclusions that Plaintiff failed to follow these regulations. This is a conclusion that should be reached by the fact finder—not an expert witness.

4. Opinion that entry into the manhole should not have been attempted without appropriate atmospheric testing violated OSHA standards and could have avoided the accident

Plaintiff objects to this opinion based upon the factual record and claims that Jacobus's opinion is unreliable since he is not an OSHA expert.

Defendant argues that Jacobus is qualified based upon his education and experience to offer the opinion that if atmospheric testing had occurred prior to the accident, the incident could have been prevented. Defendant does not address whether Jacobus is qualified to testify about any OSHA violations.

■ Jacobus may testify regarding the proper atmospheric testing procedures that should be followed before entering a manhole. Jacobus can testify as to the OSHA standards that are to be followed by utility workers before work commences in an underground manhole. However, Jacobus cannot testify whether Plaintiff violated these regulations by failing to follow the proper procedures. Again, this is the province of the ultimate decision makers—the jury.

**D. Defendant's Motion to Exclude Testimony of Douglas Buchan**

Douglas C. Buchan owns a consulting business and provides gas incident investigation testimony as an expert witness. He provides consulting work for the Department of Transportation ("DOT") and for the Department of Energy. He holds a high school diploma and has completed several college courses. After his first year of college he went into the gas distribution business full-time. Following his many years in the private sector, he was appointed to the position of Deputy Assistant Secretary of Energy from 1989–1993. While at the Department of Energy, Buchan primarily worked to build a coalition within the gas industry to support the deregulation of the gas utilities.

Plaintiff plans to use Buchan's opinion to support its theory that MGE failed to follow written regulations, industry standards, and their own internal policies, thus resulting in the July 25, 1997, gas explosion. In summary, Buchan's opinion is that the actions and inactions of MGE constituted negligence and gross negligence which were the cause of the natural gas explosion which injured Plaintiff.

Buchan bases his opinion on the following observations: 1) MGE's lack of records pertaining to the design, wall thickness, condition, maintenance, repairs or leak history of the pipeline between 1936 and 1960; 2) 30(b)(6) testimony that incomplete records exist of investigations, tests, repairs, replacement or alterations, or inspections or tests to the section of the pipeline which failed; 3) no survey records to determine active corrosion of the sub-

ject pipeline; 4) improper annual leak surveys during vegetation growing seasons (a recognized method of discovering leaks); 5) MGE should have known that odorant is scrubbed if passes through soil; and 6) lack of an active educational program offered to other underground utility organizations about the dangerous characteristics of an underground natural gas pipeline. Finally, Buchan holds opinions regarding which sets of regulations and laws are pertinent to the case.

Defendant opposes Buchan's opinion because 1) he is not qualified to testify as an expert witness and 2) his opinions are unreliable, irrelevant, form legal conclusions and will not assist the trier of fact.[3]

MGE argues that Buchan, a professional witness, is not qualified although he has worked with or for the United States government on a consecutive basis since 1989. He was a Deputy Assistant Secretary of Energy from 1989–1993 and is currently a consultant to DOT. His current positions run the gambit from consultant, propane expert, heating fuel expert, natural gas distribution expert, and energy emergencies consultant for the Department of Energy. Primarily, MGE opposes Buchan because when he was with the United States Government he had little responsibility for the natural gas industry including corrosion standards; and prior to his government service, his previous job experience primarily related to the propane gas industry.

In addition, MGE claims that many of Buchan's observations are legal conclusions based upon questions of law and therefore are not proper for expert testimony. MGE opposes Buchan's opinion that natural gas leaks from underground gas pipelines migrate into manholes and in the process the odorant is scrubbed from the product as it travels through the soil

on the basis that he is not a chemist and therefore is not qualified to offer this opinion.

Plaintiff offers few, if any, helpful arguments in support of Buchan's testimony.[4] However, his testimony regarding the laws and regulations may be similar to the approved expert testimony in *United States v. Van Dyke,* 14 F.3d 415, 422 (8th Cir.1994) where the Eighth Circuit held relevant expert testimony concerning a complex regulation (Regulation O) and the effects it has on an industry (banking industry).

■ Since the regulations pertaining to the natural gas industry are cental to its safe operation, Buchan can testify to the regulations and why they are required. His experience in developing industry support for deregulation and the accompanying regulations make him a qualified witness. Even though he lacks a formal engineering education, his experience makes him a qualified witness who can help the jury understand the importance of the regulations.

■ However, his testimony regarding the scrubbing of odorant as it passes through the soil will not be allowed since it does not meet the reliability requirement of *Daubert/Kumho.* Mr. Buchan is not a chemist and does not have the engineering background to offer an opinion that would be helpful to the jury. Whatever observations Buchan makes regarding the scrubbing of odorant is better placed in the jury's hands based upon their analysis of the facts and the other testimony offered by more qualified experts on this subject.

Buchan will not be permitted to testify that MGE was "negligent" or "grossly negligent." Those conclusions are ultimate issues reserved to the jury.

---

**3.** However, MGE does not oppose his testimony regarding the applicable federal and state laws and regulations pertaining to the natural gas industry.

**4.** For instance, Plaintiff states that Buchan's testimony is helpful to the jury's understand-

ing of the theory of odorant displacement as it travels through soil. However, Plaintiff offers no real evidence that he's qualified to offer an opinion regarding the failure of the odorant outside of referring to the exhibit of his vitae.

### E. Defendant's Motion to Exclude the Testimony of Douglas B. Chisholm

Dr. Douglas B. Chisholm holds a bachelor of science and a master of science degree in mechanical engineering from Cornell University. He holds a doctorate of applied materials engineering from George Washington University. Professionally, Chisholm works as a consulting engineer who lends assistance in evaluating fatigue, fracture mechanics, structural safety, and failure analysis of materials and components in pipeline and pressure vessels. Prior to becoming a consulting engineer, Chisholm held the position of General Engineer and Chief at the Research Unit of the Office of Pipeline Safety, Research and Special Programs Administration for DOT. His primary responsibility at the DOT was to manage the research and development projects within the Office of Pipeline Safety.

Chisholm offers several opinions which MGE encourages the Court to reject. First, Chisholm concludes that the most probable cause of the leak in MGE's Liberty Lateral pipeline is corrosion. Chisholm's second opinion is that MGE knew or should have known that the Liberty Lateral pipeline was at a high risk of rupturing or leaking. Third, Chisholm opines that the odorant added to the gas in the Liberty Lateral was stripped by the soil which made the leaking gas unreasonably dangerous, and that MGE should have warned the plaintiff of this danger.

### 1. First opinion-leak is caused by corrosion

Chisholm indicates that there are four possible causes which would produce the leak in the Liberty Lateral pipeline: 1) corrosion; 2) Third party damage; 3) girth weld leak; or 4) a burnt metal defect. However, neither Chisholm nor any other expert can specifically conclude why the pipeline failed.

In its opposition, MGE points to Chisholm's admission that the single most important item in determining the cause of a pipeline failure is the opportunity to examine the pipe. Since MGE chose not to excavate the pipeline, no evidence ever became available to determine the probable cause of the leak.

Chisholm states that there are two methodologies that can be used by an investigator when unable to examine the pipeline for cause of failure—probabilistic risk analysis and statistical analysis. He uses statistical analysis as the basis of his opinion. Basically, the theory determines the most probable cause of pipeline leakage based upon the installation age of the pipeline and the number of incidents of leakage associated with the pipeline.

Chisholm's sole assertion of the theory's acceptance within the engineering community relies on a presentation entitled Statistical Analysis of DOT—OPSO (Department of Transportation—Office of Pipeline Safety Operations) Data, presented at the 1979 Sixth Symposium on Line Pipe Research. When asked why he did not use probabilistic statistical analysis as his methodology, Chisholm replied that not enough data (from the accident scene) was available to use that method of analysis.

Defendant objects to reliance on a statistical analysis because it is "nothing more than a process of concluding that a particular cause of the failure is the most probable because, of all the failures known to have occurred in other cases, one cause occurred more than the others." Defendant further argues that this theory cannot be shown as generally accepted, tested, or based upon a peer-reviewed methodology. The Court agrees but for reasons different than those argued by Defendant.

 Chisholm explained why he could not consider all other causes—the pipeline was never excavated for physical evaluation. But even with that explanation, the Court in its role as a gatekeeper cannot allow this evidence. To do so would violate *Hose* because Chisholm has not really excluded other causes or performed tests for affirmatively determining the cause. Reliability must be grounded by the meth-

ods an engineer espouses. *See Daubert*, 113 S.Ct. at 2795. Such methods have not been demonstrated in this case. Presentation at a symposium is not proof that the method is generally embraced by the engineering community; Chisholm has failed to show that statistical analysis is an accepted method.

Plaintiff fails to offer any sound arguments in response to Defendant's objection. In fact, Plaintiff merely attacks MGE's record keeping and maintenance procedures, and raises other matters without providing the Court with an explanation as to why Chisholm's statistical inference is an admissible opinion.

Therefore, the Court finds that Chisholm's opinion about the ultimate cause of the pipeline's leakage will not be allowed into evidence. However, the Court finds that his testimony regarding the historical operations of the pipeline, the typical causes of failure in a pipeline as it ages, the historical frequency of these typical causes, why he believes some of the typical causes did not occur here, the facts which he believes support corrosion as a cause, and the importance of excavation in determining pipeline failure, among other topics, are all relevant to the case. In short, he will be permitted to testify as to the basis for his opinion but will not be permitted to state the opinion. Chisholm's testimony on these subjects will be helpful testimony that will provide the jury with the necessary foundation to consider the evidence presented and reach its own conclusion as to the cause of the pipeline failure.

2. Liberty Lateral was at high risk for failure

Chisholm proffers an opinion that the Liberty Lateral was subject to excessive downward stress from the overburden placed on top of it when the entrance ramp to I–70 was constructed. He calculates stress loads in excess of those permitted by federal law. Chisholm uses the Spangler formula for the calculation of the stress. The Spangler formula is primarily used for pipeline design and contains a built-in margin of safety.

MGE opposes this testimony on the basis that Chisholm used an incorrect formula. MGE characterizes this formula as "much too conservative because predicted failures of pipelines were not happening." MGE argues that Chisholm should have used a stress calculation formula that accounts for beneficial lateral restraint provided by compacted soil on the sides of the pipeline.

There is no dispute as to the validity of the Spangler formula. Defendant's real argument is that it is factually inappropriate. Whether the Plaintiff's or Defendant's experts use the ideal formula is for the jury to decide. It is not in the realm of the *Daubert/Kumho* framework for the Court to decide this matter—it is an issue to be considered and decided by the ultimate fact finder, the jury.

▬ MGE also argues that Chisholm not be allowed to testify that the leak could be detected if a hydrostatic test had been performed when the highway entrance was built or by checking for gas in the manhole where the accident occurred. Even though these tests cannot indicate when the leak started, they provide a mechanism for determining whether the leaks were occurring during the construction of the interstate highway or during routine maintenance examinations. The Court will allow this testimony. Chisholm may also opine regarding when the leak occurred. His opinion in this regard seems as valid as that of Dr. Jacobus. It will be for the jury to decide which opinion is entitled to greater weight.

3. No Sufficient Basis for Opinion that the Odorant was Stripped by the Soil

Chisholm opines that the odorant in the gas was stripped when it passed through the soil thus the gas was unreasonably dangerous. He bases his opinion on the testimony from Plaintiff and others that they did not smell gas before the accident

and on the fact that no odor was detected afterwards by investigators.

Defendant states that Chisholm is not qualified to render this opinion since he is not a chemist and his theory has not been tested. Defendant offers the testimony of Plaintiff's expert, Robert Stubbs, in contradiction to Chisholm. Stubbs states that whether the soil has scrubbed the odorant of the gas can only be determined by determining the path of migration, taking soil samples and measuring the effect of the soil on odorant as it flows through the samples.

■■■ Dr. Chisholm has a long career in investigating pipeline accidents. Whether he is a chemist is immaterial. As an accident specialist, Dr. Chisholm is certainly qualified to render the opinion of what occurs when natural gas with odorant additive passes through the soil. Even though no soil samples were taken immediately after the accident to confirm whether the odorant was adsorbed or absorbed, Chisholm's knowledge about the lack of odorant and causes thereof is relevant to the case at bar and meets the standards of reliability set forth in *Daubert*. Chisholm may testify as to odorant absorption. Whether the Plaintiff's experts differ on their opinion is not an issue to be decided by the Court. The jury will have the ultimate responsibility of deciding whether Chisholm's and Stubbs' differing opinions can be reconciled.

F. Defendant's Motion to Exclude the Testimony of Ralph W. Stephens

Stephens is a corrosion engineer who proffers the opinion that the leak in the Liberty Lateral was caused by corrosion and criticizes MGE's corrosion control efforts. In 1976, Stephens wrote an article for the Department of Transportation entitled "Survey Procedure for Bare and Ineffectively Coated Pipeline." He has over forty years of experience in pipeline evaluation and safety. He is a frequent lecturer and speaker on all aspects of cathodic protection. Plaintiff plans to use Stephens as a source for explaining the technical aspects of this case to the jury.

MGE states that Stephens' opinion that corrosion caused the leak is unreliable based upon the methodology used to arrive at that opinion. In addition, MGE argues that Stephens' opinion about the inadequacy of MGE's corrosion control activities is inadmissible because they are irrelevant.

MGE challenges Stephens' opinion on several grounds. First, Stephens fails to utilize any recognized method of evaluation in arriving at his opinion. Second, Stephens fails to eliminate any other causes of failure which makes his opinion unreliable. MGE argues that if Stephens has not looked at the pipeline, he cannot make the conclusion that the pipeline failed due to corrosion. This is similar to the arguments raised in response to the previous experts' opinions. Third, MGE criticizes Stephens' opinion of MGE's corrosion control program. MGE argues that without evidence that corrosion caused the leak in the Liberty Lateral, these opinions are not relevant to any issue in the case and will not provide any assistance to the jury.

Plaintiff states that Stephens has inspected hundreds of bare pipelines that had a history of being unprotected from corrosion. Because of his experience and knowledge, he is qualified to say when and why pipelines fail. As with the other experts, the Court accepts Stephens as a qualified witness based upon his experience and knowledge.

In arriving at his opinion, Stephens relies upon historical information about the pipe, i.e., 1) no protective coating on the pipeline for forty years, 2) method of joining the sections of pipeline is unknown, 3) no corrosion control for forty years, 4) probability that the pipeline is installed in corrosive clay soil with a high moisture content, 5) the probable existence of corrosive soil due to continuous use of road salts that permeate the soil, and 6) the depth of the buried pipeline.

The fundamental weakness in Stephens' opinion is that his methodology is suspect. He does not offer any information on if or how these theories are used within the industry. Stephens does an adequate job of reciting articles he uses to arrive at his opinion but does nothing to show how other corrosive engineers make conclusions of pipeline failures without examining the pipeline or the soil around it.

 Stephens' opinion that the pipeline failed because of corrosion will not provide reliable testimony to the jury. Stephens' conclusion was reached without eliminating other causes. The opinion will not meet the *Daubert/Kumho* test for reliability since the expert did not provide the Court with a suitable explanation for how the opinion was arrived at.

There is no question that Stephens has a long and varied career. His testimony about corrosion and how it occurs will no doubt be helpful to the jury in understanding the science of corrosion and the relative condition of the Liberty Lateral but he will not be permitted to testify as to the ultimate cause of the pipeline's leakage.

F. Defendant's Motion to Exclude the Testimony of Robert C. Stubbs

Mr. Stubbs is a consulting and analytical chemist whose specializations include the evaluation of odorant effectiveness in natural gas accidents. MGE wishes to exclude all of Stubbs' opinions which state:

1) there was no odor of gas in the manhole at the time of Plaintiff's accident;

2) odor deficiency was probably caused by the absorption of odorant by the soil as gas leaked into the manhole;

3) ignition of gas was caused by static electricity and not Plaintiff's attempt to light a cigarette;

4) MGE demonstrated a willful indifference to safety when it did not test the manhole even though it knew leaking gas could migrate underground and knew of the phenomenon of soil adsorption of gas odorant;

5) the escape of gas was caused by MGE's negligence;

6) MGE had a responsibility to provide warnings about odor fade, odor masking, and the importance of gas detectors;

7) MGE's actions in failing to find and repair the leak and provide warnings caused the accident;

8) natural gas is unreasonably dangerous if the odorant loses its effectiveness;

9) MGE had a responsibility to warn and educate;

10) MGE's failure to warn illustrates a conscious disregard for the lives and property of people like Plaintiff; and

11) the natural gas that caused Plaintiff's injuries was a defective product.

Defendant opposes Stubbs' opinion on the basis it is unreliable and will not assist the jury. MGE states that: 1) each opinion is based upon speculation and conjecture; 2) Stubbs derived his opinion on soil adsorption of odorant theory without performing any scientific testing; and 3) all other theories should be excluded because they are based on junk science.

1. Stubbs' opinion that the gas ignited had no odorant and probable reason is that gas odorant was absorbed by the soil

MGE argues that because Stubbs failed to perform any tests and failed to present how his opinion is based upon acceptable standards, his opinion should be excluded. Stubbs' testimony is centered on evidence in the case that no one was able to smell the odor associated with natural gas. He developed his theory based upon a gas dispersal pattern model which considers whether the leak is a general or local dispersion leak, the soil condition, atmospheric conditions, and other relevant considerations. Stubbs has used this model several times in other litigation. *See*

Stubbs' Deposition Testimony pg. 48–52. From the evidence and the model presented, Stubbs arrived at his conclusions without taking soil samples and without identifying the path of gas migration. MGE claims that the rendered opinion is therefore unreliable and incomplete.

Plaintiff counters that the exact conditions on the day of the accident cannot be duplicated. Even so, the existence of the odor fade is well established and scientifically acknowledged. Finally, Plaintiff argues that because MGE failed to perform a failure analysis of the pipeline and the odorant, Plaintiff should not be penalized for presenting evidence that helps the jury understand what conditions may have occurred to cause the accident.

 The Court agrees with Plaintiff. Whether Stubbs' gas dispersal pattern is useful without taking soil samples is a question to be presented to the jury. Defendant may discredit Stubbs' theory and method on cross-examination. But enough evidence exists, namely the eyewitnesses, to give credit to Stubbs' theory that the odorant was scrubbed as it traveled through the soil. Since he has vast experience in these types of accidents, his opinion is reliable and will be helpful to the jury.

2. Stubbs' opinion that the probable cause of ignition was static electricity as an alternative to the cigarette theory of ignition

MGE challenges Stubbs' opinion that static electricity ignited the gas in the manhole by stating that there is not enough competent evidence to support the theory that static electricity caused the ignition. MGE offers that Stubbs has no information on the relative humidity in the manhole or what electric conductors were present which therefore makes his opinion lacking in a scientific basis. Also, MGE argues that Stubbs conceded that he could not say that static electricity was more probable as the source of ignition than lighting a cigarette in the manhole.

 The Court will allow this conclusion concerning possible causes of ignition to be presented to the jury. Whether conditions existed on the day of the accident can be disputed through cross-examination.

3. Stubbs' opinion that MGE demonstrated willful indifference to safety

Stubbs' opinion is based on the premise that when MGE failed to test the manhole for leaking gas, it knew that an accident such as the one experienced by the Plaintiff was possible. MGE objects to the reliability of this opinion since no evidence exists that if MGE had inspected the manhole, gas would have been detected, and the accident would have been avoided.

 Stubbs' opinion will not be presented to the jury. Stubbs is making a factual conclusion on what MGE knew or didn't know. Based upon this conclusion, Stubbs states that MGE was willfully indifferent to safety. This testimony trespasses over the jury's ultimate decision by making a legal conclusion.

4. All other opinions

MGE objects to Stubbs' remaining opinions (5, 6, 8, 9, 10, and 11) on the basis of reliability. MGE argues that no evidence exists to support these conclusions.

Plaintiff cites several cases which allowed expert testimony on evidence similar to the case before the Court. However, Plaintiff fails to challenge Defendant's arguments of reliability outside of citing a couple of Missouri cases. *Donahue v. Phillips Petroleum Co.*, 866 F.2d 1008 (8th Cir.1989); *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10 (1994) (primarily holding that plaintiff cannot ask for damages in closing arguments of a strict liability case without presenting evidence in their case in chief and secondly, allowing an expert's testimony regarding the failure of the gas odorant and the responsibility of providing an adequate warning).

Stubbs' opinions may not be presented to the jury. Stubbs is making legal conclusions properly reserved to the jury—not an expert witness. The risk is great that if allowed to testify, he will improperly influence the jury in its decision making process.

### 4. Conclusion

Based upon the parties briefs, the relevant law, and the testimony received at the *Daubert* hearing, the Court finds the following:

1. Bushman may testify as to history of the pipeline's corrosion control system. He may not testify about the ultimate cause of the pipeline's failure.

2. Kiefner may testify about generally accepted causes of pipeline failures, the history of the pipeline, the maintenance and operation of the pipeline. He may not make any conclusions of the ultimate cause of the pipeline's failure.

3. Jacobus may testify that the gas odorant was not completely adsorbed prior to entry in the manhole and whether natural gas was introduced into the manhole shortly before the incident date. He may not offer the opinion that corrosion or stress fracture were not the cause of the pipeline's failure and; he may testify as to what is a "confined space" and the applicable regulations pertaining to a communications utility worker entering a manhole.

4. Buchan may testify as to the regulations imposed upon the natural gas industry and why they are important. However, he may not make any legal conclusions regarding MGE's actions in the maintenance and operation of the pipeline. He may not testify as to whether the odorant was scrubbed from the natural gas as it escaped from the leak in the pipeline.

5. Chisholm may not testify as to the ultimate cause of the pipeline failure. He may testify as to the historical operations of the pipeline, the typical causes of pipeline failure, and the proper procedures necessary for determining pipeline failure. Chisholm may testify as to whether the pipeline was under excessive downward stress from the overburden of the roadway built above the pipeline and whether the odorant was stripped from the gas as it traveled through the soil.

6. Stephens may not testify as to the ultimate cause of the pipeline's failure. He may testify about the science of corrosion, how it impacts a pipeline, and what causes corrosion.

7. Stubbs may testify as to whether the odorant was scrubbed as it traveled through the soil. He shall not offer an opinion as to whether static electricity was the probable cause that ignited the natural gas. He may testify concerning the possible causes of ignition. Stubbs may not testify as to whether MGE acted wilfully indifferent to the safety of others, and he shall not testify as to his opinions (# 5, 6, 8, 9, 10, 11).

IT IS SO ORDERED.