**BIOMEDICAL INSTRUMENT AND EQUIPMENT CORP.,**
Plaintiff, Appellant,

v.

**CORDIS CORPORATION, et al.,**
Defendants, Appellees.

No. 85–1909.

United States Court of Appeals,
First Circuit.

Argued April 8, 1986.
Decided July 16, 1986.

David Carrion Fuentes, with whom Bufete Carrion Fuentes, San Juan, P.R., was on brief, for plaintiff, appellant.

Francisco Ponsa-Flores, with whom Francisco Ponsa-Feliu, Edda Ponsa-Flores and Lawrence E. Duffy, San Juan, P.R., were on brief, for defendants, appellees.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

In late 1983 Cordis Corporation, a manufacturer of cardiac pacemakers and other medical supplies, stopped doing business with its distributor in Puerto Rico, a company called Biomedical Instrument and Equipment Corp. After a six-month hiatus, Biomedical sued Cordis, in a commonwealth court, claiming that Cordis violated the Puerto Rico Dealers' Contracts Act, 10 L.P.R.A. § 278 *et seq.*—a statute that (as relevant here) forbids a manufacturer from ending its business relation with a distributor unless there is "just cause" for doing so. 10 L.P.R.A. § 278a. Cordis, a Florida corporation, removed the case to federal district court; and, that court, after appropriate discovery, granted Cordis' motion for summary judgment. 604 F.Supp. 582. Biomedical appeals the court's decision, claiming that the record shows a "genuine" and "material" issue of fact, the resolution of which requires a trial. Fed.R.Civ.P. 56(c). We agree.

The reason that the district court granted Cordis' motion is that Biomedical failed to pay Cordis' bills on time. Biomedical's contract with Cordis allowed it ninety days for payment, but Biomedical typically and continuously ran an overdue (beyond ninety days) balance owed of as much as $30,000. The district court said:

> When a dealer consistently owes the principal considerable amounts of money and does not timely pay them so that there is a balance of over $18,000 extending over a period of two years before termination, and being payment of the amounts due one of the principal, if not the most important, reason for entering any contract, we hold that the dealer did not perform one of the essential obligations of the dealer's contract.

In our view, however, the matter is not so simple.

The district court is clearly right about Puerto Rico's law. To cut off Biomedical, Cordis must have "just cause," and "just cause" (insofar as relevant here) means "nonperformance of any of the *essential* obligations of the dealer's contract." 10 L.P.R.A. § 278(d) (emphasis added). The court is also right, as a general matter, that consistent failure to pay on time likely violates an "essential obligation." But, here there are special circumstances. That is to say, Biomedical argues that the history of its dealings with Cordis makes clear that its duty to pay on time, while an obligation, was not an "essential" obligation of its contract. And, it presents enough evidence to raise a genuine factual issue.

First, Biomedical points to evidence in the record suggesting that Cordis' decision to terminate had little to do with overdue balances; rather, it rested upon Cordis' view that Biomedical had not done enough to promote Cordis' products. Cordis' termination letter focuses almost exclusively upon Biomedical's performance. (It mentions Biomedical's credit history as well, but refers to it as a "contributing factor.") Of course, poor performance might also amount to "just cause," either because it breaches an "essential obligation" or because it satisfies an alternative branch of the statutory definition of "just cause," namely, "any action or omission" on the

dealer's part that "adversely and substantially affects" the manufacturer's interests in "promoting the marketing or distribution of the merchandise." 10 L.P.R.A. § 278(d). But, the parties agree for purposes of this appeal, that the "poor performance" charge raises triable issues of fact.

Second, Biomedical says that both it and Cordis understood that overdue balances (at least in the amounts at issue) would not constitute grounds for terminating their relationship. Biomedical submitted affidavits from its own president, Miguel Arrieta, and Cordis' former regional sales manager, Gregory Velez. Arrieta says:

> Cordis represented and warranted to Biomedical that the cash limitation of Biomedical would never be a detrimental factor in their relationship ... [t]hat as a matter of fact, every time there were outstanding invoices not paid by Biomedical ... Cordis would accomodate Biomedical through either payments or extension of their credit line consistent with the original agreement.

Velez says:

> [T]he credit situation between Biomedical and Cordis was never a fact considered as detrimental to the relationship between Biomedical and Cordis.

Third, Biomedical points to the history of its credit relationship with Cordis—a history that begins soon after Biomedical and Cordis began their relationship in May 1980. We reproduce the relevant account in the Appendix. That account shows that Biomedical consistently owed Cordis a significant amount of money, and for more than ninety days. But, it also shows that Biomedical had reduced that overdue balance significantly—from about $32,000 to about $11,000 by the beginning of December 1983 when Cordis wrote its termination letter. This history, of course, shows that Biomedical's payments were late. But it also helps to substantiate Biomedical's claim that overdue balances in these amounts were not a matter of serious concern to the parties, that Cordis understood

that Biomedical's financial position might prevent timely payments, and, that Biomedical's obligation to pay these sums on time was not "essential" to the manufacturer-distributor relationship. The testimony of Velez, Arrieta and possibly others should help the district court evaluate the significance of this account record.

▪ To repeat the main point: this evidence taken together viewed in the light most favorable to Biomedical, *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), raises a genuine issue of material fact as to whether or not the parties considered Biomedical's failure to make timely payments "essential," within the terms of 10 L.P.R.A. § 278(d).

▪ Biomedical also points out that the federal district court dissolved an *ex parte* injunction that the commonwealth court had issued before Cordis removed this case to federal court. *See* 28 U.S.C. § 1450. It says that the federal court erred in doing so. The Supreme Court has made clear, however, that when a case is removed to federal district court, that court *must* dissolve any *ex parte* state court injunction or temporary restraining order—once the maximum time limits that Federal Rule of Civil Procedure 65(b) authorizes for an *ex parte* order have expired. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 439–40, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974); *Aybar v. F. & B. Manufacturing Co.*, 498 F.Supp. 1184, 1186 (D.P.R.1980). Rule 65's time limits have long since expired here. Fed.R.Civ.P. 65(b) (*ex parte* orders must expire by their terms within 10 days of entry). Hence, the district court properly dissolved the commonwealth court order.

Since we find that Biomedical has raised a genuine issue of material fact, the district court's grant of summary judgment is

*Reversed.*

## APPENDIX
### EXHIBIT A
### CREDIT HISTORY
Biomedical Instrument & Equipment Corporation

| Month | End of Month Balance | Amount Past Due (over 90 days) |
|---|---|---|
| Jan. 82 | $35,887.00 | $32,484.00 |
| Feb. 82 | $37,864.00 | $32,685.00 |
| Mar. 82 | $29,039.00 | $25,364.00 |
| Apr. 82 | $34,683.00 | $27,396.00 |
| May 82 | $29,655.00 | $23,412.00 |
| June 82 | $30,136.00 | $28,190.00 |
| July 82 | $31,536.00 | $26,332.00 |
| Aug. 82 | $22,416.00 | $15,999.00 |
| Sept. 82 | $22,281.00 | $17,282.00 |
| Oct. 82 | $26,202.00 | $17,971.00 |
| Nov. 82 | $25,795.00 | $21,080.00 |
| Jan. 83 | $27,779.00 | $18,965.00 |
| Feb. 83 | $23,167.00 | $12,687.00 |
| Apr. 83 | $34,658.00 | $15,453.00 |
| May 83 | $31,865.00 | $12,748.00 |
| June 83 | $20,606.00 | $ 3,335.00 |
| July 83 | $29,263.00 | $ 8,238.00 |
| Sept. 83 | $41,578.00 | $ 5,646.00 |
| Oct. 83 | $35,150.00 | $ 9,477.00 |
| Nov. 83 | $38,798.00 | $10,715.00 |
| Dec. 83 | $29,471.00 | $20,251.00 |
| Jan. 84 | $28,211.00 | $21,112.00 |
| Feb. 84 | $15,135.00 | $15,135.00 |
| Mar. 84 | $15,135.00 | $15,135.00 |
| Apr. 84 | $15,135.00 | $15,135.00 |
| May 84 | $15,135.00 | $15,135.00 |

*Average amount past due (over 90 days) up to date of termination: $18,242.00