### PPM CHEMICAL CORP. OF P.R., Plaintiff, Appellant,

v.

### SASKATOON CHEMICAL LTD., Defendant, Appellee.

### No. 90–1802.

United States Court of Appeals, First Circuit.

Heard March 7, 1991.

Decided April 24, 1991.

Jose R. Franco Rivera with whom Franco–Abogados was on brief, for plaintiff, appellant.

Jorge I. Peirats with whom Pedro J. Santa–Sanchez and O'Neill & Borges were on brief, for defendant, appellee.

Before BREYER, Chief Judge,
SELYA, Circuit Judge, and BOYLE,[*]
District Judge.

BREYER, Chief Judge.

In 1985, Saskatoon Chemicals Ltd., a Canadian firm, entered into a contract with PPM Chemical Corporation of Puerto Rico, under which PPM became Saskatoon's exclusive Caribbean distributor of calcium hypochlorite. In mid–1987, Saskatoon, dissatisfied with PPM's performance, told PPM it would no longer sell *exclusively* to PPM (though it would still sell to PPM on a *non* exclusive basis). PPM then claimed that Saskatoon violated Puerto Rico's Dealers' Contracts Act, which says that:

> no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew [its] ... contract [with its dealer] on its normal expiration, *except for just cause.*

P.R.Laws.Ann. tit. 10, § 278a (1976) (emphasis added).

The district court granted summary judgment for Saskatoon. In its view, the record showed, beyond dispute, that a) PPM's failure to pay Saskatoon on time, and b) PPM's failure properly to supply a customer, each independently constituted "just cause" for ending the exclusive distribution arrangement. The district court also held that, in any event, because the chemical was "generic" and not "brand name," PPM did not qualify for protection as a "dealer" under the Act. PPM now appeals.

After reviewing the record in this case, we have found more than sufficient factual and legal support for the district court's judgment, based upon the first óf these matters alone, namely that Saskatoon had "just cause" for its actions. *See* Fed.R. Civ.P. 56(c) (summary judgment proper where no "genuine issue" of "material fact," and the undisputed facts entitle the moving party to a "judgment as a matter of law"). Thus, we need not reach, and express no opinion upon, the district court's alternative holding.

> The Act defines "just cause," in part, as: nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer....

*Id.* § 278(d). We have held that paying for goods on time normally is one of the "essential obligations of the dealer's contract." *See Biomedical Instrument & Equip. Corp. v. Cordis Corp.,* 797 F.2d 16, 17 (1st Cir.1986). And, the record before us adequately establishes that PPM failed to meet this obligation.

The record reveals the following uncontroverted facts:

1. When Saskatoon and PPM entered into their exclusive distribution arrangement in October 1985, Saskatoon specified that PPM must pay for each shipment that it ordered by means of an irrevocable letter of credit drawn on a Canadian bank, the terms of which would provide for payment by the

bank to Saskatoon within 30 days of PPM's receipt of the shipment.

2. After PPM placed its first order in June 1986, and after Saskatoon began to ship the order, PPM told Saskatoon that it could not arrange for the letter of credit.

3. Saskatoon then told PPM that it could send payment by wire transfer, but a) PPM must send the payment within 30 days of receiving each shipment, and b) Saskatoon would limit its shipments to PPM, not permitting PPM's outstanding unpaid account to exceed at any one time more than about $50,000 (two trailer loads' worth of chemicals).

4. During the next year, PPM ordered a total of eleven trailer loads of chemicals. It did not pay *any* of the corresponding eleven invoices on time. At the time of termination, the payments ranged from five days to sixty-six days late (after that, the delays became even worse). Between June 1986 and June 1987, PPM's outstanding unpaid bills to Saskatoon equaled or exceeded the "two-trailer-load limit," for about nine months. During that time PPM (because of its outstanding debt to Saskatoon) could not order more chemicals on credit. At least one of PPM's customers wanted more Saskatoon chemicals during this time but found them difficult to obtain.

5. Saskatoon sent at least five dunning telexes, including one in late April 1987 which said,

WE HAVE NOT RECEIVED PAYMENT ON OUTSTANDING INVOICES. WHAT IS THE STATUS. IT IS IMPERATIVE THAT YOU REPLY ASAP OR OUR RELATIONSHIP WILL BE IN JEOPARDY.

6. In July 1987, Saskatoon terminated its "exclusive" arrangement with PPM because of its payment record and because (in Saskatoon's view) PPM was not serving its customers properly.

These facts are essentially conceded. The only defense that PPM offers, in its brief, for the late payments, is that, during the first part of 1987, "the commercial relationship between the parties ... enjoyed its greater success in sales."

Given these undisputed facts, no reasonable fact finder could fail to find "just cause" for PPM's termination. As we previously said, payment obligations are normally "essential" terms of a contract, *see Cordis,* 797 F.2d at 17, and PPM simply failed to fulfill them. Nothing in the record would support a finding that this case presents any unusual, abnormal circumstance in which a supplier does not care about late payments. To the contrary, here, given PPM's credit ceiling of two trailer loads, prompt payment would have increased PPM's ability to order more chemicals, helping it further to develop the market for Saskatoon's products. The fact that PPM ordered more chemicals in 1987 than before is simply beside the point.

The judgment of the district court is

*Affirmed. Costs to Appellee.*