# United States Court of Appeals
## For the First Circuit

Nos. 17-1570 & 17-1571

CASCO, INC.,

Plaintiff, Appellee/Cross-Appellant,

v.

JOHN DEERE CONSTRUCTION & FORESTRY COMPANY,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Eduardo A. Zayas-Marxuach, with whom Henry O. Freese-Souffront, Carmen M. Alfonso Rodríguez, and McConnell Valdéz LLC were on brief, for appellant/cross-appellee.
Ricardo F. Casellas Sánchez, with whom Heriberto J. Burgos Pérez, Carla S. Loubriel Carrión and Casellas Alcover & Burgos, PSC were on brief, for appellee/cross-appellant.

March 2, 2021

HOWARD, **Chief Judge**. For years, Casco, Inc. ("Casco") and John Deere Construction & Forestry Company ("Deere") were parties to a dealership agreement. When Deere terminated the agreement in 2013, Casco sued Deere for unjust impairment and unjust termination under Puerto Rico's Dealer Protection Act, P.R. Laws Ann. tit. 10, § 278 ("Law 75"), as well as for dolus[1] (deceit) under Article 1902 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 3408. Deere cross-claimed to recover amounts owed to it by Casco. After Casco presented its case to the jury, the district court dismissed the dolus claim and granted judgment on Deere's counterclaim. Following trial, the jury awarded relief to Casco on both Law 75 claims.

Deere appeals the district court's denial of its post-judgment motions for judgment as a matter of law on the Law 75 unjust termination claim and for a new trial for both Law 75 claims. Deere also appeals the district court's failure to remit the damages award or order a new trial on damages. Meanwhile, Casco cross-appeals the district court's mid-trial dismissal of

---

[1] The parties, as well as courts, sometimes use the term "dolo" to identify the same cause of action. See Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020) (using "dolo"), Citibank Glob. Markets, Inc. v. Rodríguez Santana, 573 F.3d 17, 29 (1st Cir. 2009) (using "dolus" and "dolo" interchangeably).

Casco's <u>dolus</u> claim, refusal to certify questions of law to the Supreme Court of Puerto Rico, and grant of judgment on Deere's counterclaim.

We affirm each of the challenged rulings. Based on the evidence, the jury's findings of liability and damages against Deere were not unreasonable. The district court properly dismissed Casco's <u>dolus</u> claim because it was necessarily tied to showing constructive termination under Law 75, which Casco could not do as a matter of law. The court did not abuse its discretion by declining to certify questions to the Supreme Court of Puerto Rico. And the court correctly granted relief on Deere's counterclaim.

## I.   FACTUAL HISTORY

In 1986, Casco and Deere entered into a contract ("the Agreement") under which Casco would resell Deere construction equipment and parts to customers in Puerto Rico. Article 3 of the Agreement listed "Dealer Essential Obligations," some of which included stocking adequate parts and machines in inventory; maintaining adequate service facilities and qualified, trained personnel; and actively promoting sales in the territory. Article 10 of the Agreement, titled "Default by Dealer," provided that:

> [I]f the Dealer fails, for any reason whatsoever, to pay any indebtedness which it owes [Deere] when the same becomes due, or . . . the Dealer fails to perform its essential obligations, duties, and

> responsibilities under any of the provisions
> of Article 3 or any other provision of this
> agreement . . . [Deere] may thereupon . . .
> [t]erminate this Agreement[.]

Eventually the parties' relationship began to sour. In 2009 Casco filed suit against Deere under Law 75 relating to Deere's modification of payment terms. The parties settled that claim and filed a joint motion to dismiss without prejudice. Of relevance here, the settlement agreement required the parties "to mutually assist and cooperate with each other in the sale and distribution of the John Deere products."

Three years later, the parties again came to blows. In September 2012, Casco fell behind on its payments to Deere. Although Casco continued to make partial payments, it carried an outstanding balance. By December, Casco was current on its payments. On December 18, 2012, Deere cancelled a purchase order from Casco for an excavator that Casco had sold to a construction company in Puerto Rico. As justification, Deere cited Casco's failure to complete all of Deere's New Model Qualification ("NMQ") trainings that Deere required for dealers servicing the iT 4 diesel engine, a component of the excavator.

In early 2013, Casco again fell behind on its payments. Deere continued to accept partial payments, but by the end of March, Casco owed Deere approximately $150,000. On March 29, 2013, Deere invoked Article 10 and terminated the Agreement, effective

immediately, and cited Casco's past-due payments and various violations of Article 3 as the reasons for termination.

## II.  PROCEDURAL HISTORY

In April 2013, Casco filed its complaint against Deere, asserting damages for unjust impairment of the Agreement under Law 75 for the December 2012 order cancellation (Count 1), unjust termination of the Agreement under Law 75 (Count 2), and dolus for Deere's alleged fraudulent inducement and performance under the settlement agreement (Count 4).[2]  Deere filed a counterclaim to recover additional outstanding balances owed by Casco that had come due upon termination.

A jury trial was held in March 2016.  After Casco presented its case, Deere moved to dismiss all counts and sought judgment on its counterclaim.  The district court dismissed the dolus count and granted judgment on the counterclaim, and the trial proceeded on the Law 75 claims.  The jury found in favor of Casco on both claims, awarding $323,440 in impairment damages and $1,440,494 in termination damages.

In a post-trial motion, Casco requested reinstatement of the dolus claim, or alternatively, certification of questions of law to the Supreme Court of Puerto Rico pertaining to the court's

---

[2] Casco did not cross-appeal the district court's dismissal of Count 3 (breach of the covenant of good faith and fair dealing).

dismissal of that claim. Casco also renewed a previously filed Rule 50 motion to dismiss Deere's counterclaim. For its part, Deere renewed its Rule 50 challenge to the termination count, moved for a new trial as to both Law 75 counts or alternatively for remittitur of the damages against it, and sought an amended judgment as to the counterclaim amount.

The court denied Casco's requests but partially granted Deere's, remitting the Law 75 impairment damages to $58,000 (the amount of potential profit on the canceled December 2012 order) and modestly increasing the counterclaim award from $216,919.92 to $219,913. An amended judgment issued, and this appeal and cross-appeal followed.

## III. DISCUSSION

### A. Standard of Review

The parties challenge the district court's decisions on their various Rule 50 and Rule 59 motions and on remittitur and certification. We review de novo the district court's decisions on the Rule 50 motions for judgment as a matter of law, viewing the evidence in the light most favorable to the nonmoving party. Walsh v. Zurich Am. Ins. Co., 853 F.3d 1, 8 (1st Cir. 2017). Where there is a verdict, we reverse "only if reasonable persons could not have reached the conclusion that the jury embraced." Sindi v.

- 6 -

El-Moslimany, 896 F.3d 1, 13 (1st Cir. 2018) (quoting Sanchez v. P.R. Oil Co., 37 F.3d 712, 716 (1st Cir. 1994)).

We review for abuse of discretion the district court's denials of the Rule 59 motions for a new trial. Sindi, 896 F.3d at 13. A trial court may "order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice." Id. ("citing Sanchez, 37 F.3d at 717)." We review the evidence in the light most favorable to the verdict winner, Casco. Newell P.R., Ltd. v. Rubbermaid Inc., 20 F.3d 15, 18 (1st Cir. 1994). We also review for abuse of discretion the district court's certification and remittitur rulings. U.S. Steel v. M. DeMatteo Constr. Co., 315 F.3d 43, 53 (1st Cir. 2002); Sindi, 896 F.3d at 13.

The parties raise four substantive issues on appeal: Deere's liability under Law 75, the legal viability of Casco's dolus claim, Casco's liability for the counterclaim, and damages. We discuss each in turn.

**B. The Law 75 claims**

Law 75 was enacted in 1964 to protect Puerto Rican dealers "from the harm caused when a supplier arbitrarily terminates a distributorship once the dealer has created a favorable market for the supplier's products." R.W. Int'l Corp. v. Welch Food, Inc., 13 F.3d 478, 482 (1st Cir. 1994). The statute

prevents principals from unilaterally terminating dealership agreements "except for just cause." P.R. Laws Ann. tit. 10, § 278a; see also Irvine v. Murad Skin Rsch. Lab'ys., Inc., 194 F.3d 313, 317 (1st Cir. 1999). A principal who terminates without just cause is subject to damages under Law 75 "[n]otwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate." § 278a.

The statute was amended in 1966 to also prohibit principals from "perform[ing] any act detrimental to the established relationship" without just cause. § 278a; see United Med. Equip. Corp. v. S. Blickman, Inc., 260 F. Supp. 912, 914 (D.P.R. 1966). Unjust impairment of a dealer relationship also subjects the principal to damages. § 278b; see Irvine, 194 F.3d at 318.

Law 75 defines "just cause," in relevant part, as "[n]onperformance of any of the essential obligations of the dealer's contract, on the part of the dealer[.]" § 278(d). Whether just cause existed and whether "essential obligations" were breached are questions of fact. R.W. Int'l Corp. v. Welch Foods, Inc., 88 F.3d 49, 51 (1st Cir. 1996).

### i. Impairment

Deere appeals the denial of its motion for a new trial on the Law 75 impairment claim. Law 75 establishes a rebuttable

presumption of impairment whenever a principal unjustifiably fails to fill an order. § 278a-1(b)(3), Irvine, 194 F.3d at 318. At the same time, Law 75 only protects against impairments of "those rights acquired under the [dealership] agreement." Medina & Medina Inc. v. Hormel Foods Corp., 840 F.3d 26, 41 (1st Cir. 2016) (quoting Irvine, 194 F.3d at 318).

The jury found that Deere's cancellation of the excavator order in December 2012 was both unjustified and in violation of Casco's rights under the Agreement. Deere argues that a new trial is warranted because the evidence presented at trial showed that the cancellation did not impair any of Casco's contractual rights and was justified in any event. Although Deere phrases these as two distinct contentions, it provides one argument in support of both: Casco's right to purchase the excavator was conditioned on its compliance with the New Model Qualification requirements. Casco did not so comply, and so Deere justifiably refused to fill the order.

In other words, Deere asserts that the evidence showed that it had just cause to cancel the order. The existence of just cause is a question of fact for the jury. Welch Foods, 88 F.3d at 51. While the jury did have evidence before it of the NMQ requirements and Casco's non-compliance therewith, it also had evidence before it that undermined Deere's claim that the

- 9 -

cancellation was justified. There was testimony that Deere had failed to rectify a technical problem restricting Casco's access to Deere's online training platform in late 2012, that Deere was repeatedly notified of the problem, and that Deere knew that the access problems prevented Casco's compliance with the NMQ requirements.

Additionally, evidence was presented that in cancelling the order, Deere deviated from its internal policy allowing distributors a 90-day grace period to complete the NMQ requirements after the purchase of a new machine. Deere justified this deviation by pointing to Casco's previous failure to meet the NMQ requirements within the grace period. But this explanation is undermined by the fact that two months later Deere sought Casco's involvement in the sale of a machine to Monsanto (a U.S.-based client who sought to use the machine in Puerto Rico) notwithstanding Casco's continued non-compliance with the NMQ requirements and their applicability to the machine sold to Monsanto.

In sum, there was evidence both that Casco's right to have Deere fill the excavator order was not in fact rigidly conditioned on strict NMQ compliance and that Casco's failure to comply with the NMQ requirements was partly attributable to Deere's own failure to remedy Casco's access problem. Construing this

- 10 -

evidence in the light most favorable to Casco, see Newell, 20 F.3d at 18, the jury's finding of impairment is neither contrary to "the demonstrable weight of the credible evidence" nor a blatant miscarriage of justice," Sindi, 896 F.3d at 13. Thus, the district court committed no abuse of discretion in denying Deere's motion for a new trial as to impairment.

### ii. Termination

Deere claims that the district court erred in denying its post-judgment motion for judgment as a matter of law or in the alternative for a new trial on the issue of unjust termination. Since it is undisputed that in March 2013 Deere terminated the Agreement with Casco, Deere's argument again comes down to its claim that it acted with just cause.

To convince us that the jury's finding to the contrary is unsustainable, Deere principally cites Casco's failure to pay for goods on time and its express right under Article 10 to unilaterally terminate upon Casco's failure to timely pay. Casco admits it had a past-due balance of nearly $150,000 at the time of termination.

Paying for goods on time is normally an essential obligation of a dealer, the non-performance of which may constitute just cause for termination under Law 75. PPM Chem. Corp. of P.R. v. Saskatoon Chem. Ltd., 931 F.2d 138, 139 (1st Cir. 1991); see

- 11 -

also <u>Biomedical Instrument & Equip. Corp.</u> v. <u>Cordis Corp.</u>, 797 F.2d 16, 17 (1st Cir. 1986) ("consistent failure to pay on time likely violates an 'essential obligation'"). Appealing to this common-sense observation, Deere would have us take from the jury the chance to look deeper at the parties' actual relationship. As then-Judge Breyer noted in <u>Biomedical</u>, "the matter is not so simple." 797 F.2d at 17. Whether timely payment is an essential obligation in any particular case remains a triable question of fact, <u>Welch Foods</u>, 88 F.3d at 51, as evidence of "special circumstances" may support a finding that a termination decision was not in fact justified by untimely payment, <u>Biomedical</u> 797 F.2d at 17; <u>see</u> <u>also</u> <u>Saskatoon</u>, 931 F.2d at 140 (timely payment is deemed non-essential in those "abnormal circumstance[s] in which a supplier does not care about late payments").

Here, the jury was presented with evidence of such "special circumstances." Casco pointed out that Article 3 of the agreement expressly lists its "Essential Obligations" and does <u>not</u> include timely payment. Additionally, Casco presented evidence tending to show that Deere's "decision to terminate had little to do with overdue balances." <u>Biomedical</u>, 797 F.2d at 17 (Breyer, J.) (pointing to evidence that supplier mainly decided to terminate for reason other than dealer's untimely payment as contributing to factual dispute over whether the untimely payment constituted just

- 12 -

cause for termination); see also Waterproofing Sys., Inc. v. Hydro-Stop, Inc., 440 F.3d 24, 30 (1st Cir. 2006)(affirming magistrate judge's finding that termination was unjustified based in part upon dealer's strong showing that principal's stated reason of untimely payment was pretextual). Casco argued at trial that Deere had instead terminated the Agreement because of bitterness over Casco's relationship with Volvo, a Deere competitor. In support of this theory, Casco presented evidence that Deere wanted to change the Agreement in 2002 to prohibit competition, but Casco refused; that Deere's executives threatened to withdraw support if Casco had any business with Volvo; that Deere refused to provide competitive financing for Casco's rental operation and was upset when Casco looked elsewhere for financing; that Deere revoked certain funding because of Casco's association with Volvo; and that in 2009, Deere began excluding Casco -- and only Casco -- from its important regional and annual dealer conferences.

In the end, the jury faced conflicting evidence about whether Casco's failure to make timely payments breached an essential obligation of the Agreement, thereby giving Deere just cause to terminate. While Article 10 stated that Casco's failure to timely pay constituted "just cause" for termination,[3] Article

---

[3] Of course, the mere fact that the terms of a contract reserve to the supplier the right to terminate unilaterally if the dealer

- 13 -

3 excluded timely payment from the list of Casco's "Essential Obligations." While Deere presented evidence that it was not indifferent to Casco's untimely payment, Casco presented evidence that Deere's true concern was retaliation for Casco's relationship with Deere's competitor. And the jury was properly instructed that timely payment is normally one of a dealer's essential obligations but may not be in "abnormal circumstances." See Saskatoon, 931 F.2d at 139-40. Its conclusion that this was such a circumstance was not unreasonable.

In addition to identifying Casco's untimely payment as just cause for termination, Deere secondarily points to Casco's alleged breach of four of its Article 3 obligations. Deere argues that Casco breached its "Essential Obligations" (1) to comply with Deere's recommended parts and service management programs by failing to comply with the NMQ requirements; (2) to stock and

_____

fails to satisfy a certain obligation does not, without more, make failure to satisfy that obligation "just cause" to terminate within the meaning of Law 75. By the plain text of the statute, Law 75's just-cause requirement cannot be contractually renounced. §278a. Were it otherwise, the statute would be a nullity, as powerful suppliers could insert in their dealership agreements provisions reserving to themselves the unilateral right to terminate upon substantively non-essential grounds. This would defeat the statute's clear design. See Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988) (reproducing Supreme Court of Puerto Rico's answer to certified question arising under Law 75, explaining the statute's history and purpose). Deere correctly acknowledges that Law 75 does not put "form over substance."

maintain an adequate inventory of machines; (3) to maintain adequate facilities along with qualified personnel so as to provide market penetration, coverage, and service in a manner consistent with Deere's reputation by, again, failing to comply with the NMQ requirements; and (4) to take appropriate corrective action to remedy these deficiencies. The jury was reasonably unconvinced.

Deere repeatedly points to Casco's non-compliance with the NMQ requirements as evidence of these alleged breaches. However, as discussed above in the impairment analysis, Casco presented evidence that this non-compliance was attributable to Deere's own failings. As to inventory, market penetration, and service, Casco was not required to have a specific number of machines in stock, achieve a certain market share, or submit a marketing or business plan.

Meanwhile, Casco presented evidence that it promoted Deere products, made regular sales visits, participated in government bids for Deere, and attended trade shows. Moreover, there was not a single customer complaint about Casco's services prior to Deere's termination of the Agreement.

Considering all the evidence before it in the light most favorable to Casco, Walsh, 853 F.3d at 8 (Rule 50 motion), Newell, 20 F.3d at 18 (Rule 59 motion), the jury's finding that Deere's termination lacked just cause was not outside the realm of

conclusions a reasonable jury could reach nor did it result in a "blatant miscarriage of justice," Sindi, 896 F.3d at 13. The district court was correct to deny both of Deere's post-judgment motions on the termination count.

### C. **Dolus**

Casco's cross-appeal challenges the district court's Rule 50(a) dismissal of Casco's dolus claim. We review de novo. Walsh, 853 F.3d at 8. Under the Puerto Rico Civil Code, dolus bars a contracting party from inducing another party through "words or insidious machinations" to "execute a contract which without them he would not have made." P.R. Laws Ann. tit. 31 § 3408. Dolus entails bad faith in the formation or performance of a contract. Oriental Fin. Grp., Inc. v. Fed. Ins. Co., 598 F. Supp. 2d 199, 219-221 (D.P.R. 2008).

In its complaint, Casco alleged that Deere acted with dolus by inducing it to enter into the 2009 settlement agreement despite never intending to "assist and cooperate with" Casco in the distribution of Deere products, as promised under that agreement. Casco argues that, but for this dolus, Casco would have litigated a Law 75 constructive termination claim in 2009 rather than waiting until the actual termination in 2013, which would have yielded a much higher damages calculation because Law 75 guidelines base termination damages off of the dealer's profits

for the five years preceding the termination, §278b(d), and the five years preceding 2009 were significantly more profitable than those preceding 2013 due to market conditions. Alternatively, Casco now also argues that, regardless of whether its 2009 lawsuit could have succeeded, evidence of its profits in the five years preceding 2009 should have been admitted as a baseline for calculating damages for the 2013 termination claim because of Deere's alleged dolus.

In granting Deere's Rule 50 motion on the dolus claim, the court observed that the claim was premised on the possibility that Casco could have been awarded five years of lost profits had it pursued its 2009 constructive termination claim. But the district court found that this could not have occurred as a matter of law because constructive termination is not a valid theory under Law 75.

To reach this conclusion, the court analyzed the statute's legislative history and case law interpreting the statute, and determined that Law 75 recognizes impairment and termination as two distinct causes of action. The court explained that as originally enacted in 1964, Law 75 did not reach impairment of contracts that fell short of total abrogation. See United Med. Equip. Corp. v. S. Blickman, Inc., 260 F. Supp 912, 914 (D.P.R. 1966). A 1966 amendment expanded the statute's prohibition to

encompass unjust impairment.  See Law No. 105 of June 23, 1966, 1966, P.R. Laws (2nd Reg. Sess., 5th Legislature) at p. 332.  Thus, the legislature added a new cause of action under Law 75 to provide a remedy where a dealership relationship has been impaired by a supplier without just cause but the relationship nonetheless continues.

The distinction carries a difference because five-year profit damages, which Casco seeks, are not usually available in impairment actions.  See Matosantos Com. Corp. v. SCA Tissue N. Am., LLC, 369 F. Supp. 2d 191, 197 (D.P.R. 2005) ("In an impairment case . . . the dealer should only be awarded the profits actually lost.").  This is so because "evidence of damages is an essential element of a Law 75 violation as to which plaintiff bears the burden of proof."  Irvine, 194 F.3d at 313 (citing opinion of Supreme Court of Puerto Rico in Marina Indus., Inc. v. Brown Boveri Corp., 14 P.R. Offic. Trans. 86, 118 (1983)."  A dealer who has suffered impairment short of actual termination will be unlikely to prove that its damages amount to five years of lost profits.

Disagreeing with the district court's analysis, Casco argues that Eliane Exportadora, Ltda. v. Maderas Alfa, Inc. supports the availability of a constructive termination theory under Law 75.  No. KAC1998-1327(506), 2007 WL 2585173 (P.R. Cir. June 20, 2007) (certified English translation at Docket No. 278-

- 18 -

1)..  In the alternative, Casco argues that whether constructive termination is a viable theory under Law 75 is unsettled, and the district court erred in refusing to certify the issue to the Supreme Court of Puerto Rico for clarification.

The district court's conclusion that Law 75 does not recognize constructive termination was correct.  Although Maderas Alfa does use the term "de facto termination," 2007 WL 2585173 at *13, the district court noted that the supplier in Maderas Alfa had ceased dealing with the distributor altogether for five months prior to the suit, id. at *2.  Thus, the case really involved an actual termination without a termination letter.  In short, Law 75 recognizes actual termination, or alternatively, impairment.  The statute does not recognize constructive termination.

It follows that certification to the Supreme Court of Puerto Rico for guidance was unnecessary.  A federal court sitting in diversity may certify an open question of Puerto Rico law to the territory's highest court, or it may "undertake its prediction when the course [the Puerto Rico] courts would take is reasonably clear."  VanHaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993) (internal quotes and citations omitted).  Here, existing authority makes the district court's conclusion on constructive termination reasonably clear.  Thus, the district court did not abuse its discretion by refusing to certify.

Nor did the court err by granting Deere's motion to dismiss the <u>dolus</u> claim. Even if but for Deere's alleged <u>dolus</u> Casco would have pursued its 2009 claim, that claim could not, as a matter of law, have resulted in the lost future profits Casco claims it lost due to <u>dolus</u>. There was no actual termination in 2009 and constructive termination, as analyzed above, is unavailable under Law 75. Count 4 was properly dismissed.

Finally, Casco's argument that evidence of its profits in the five years preceding 2009 should have been admitted to calculate damages for Deere's unjust termination in 2013 also lacks merit. Casco argues that Deere acted with <u>dolus</u> by waiting until 2013 to wrongfully terminate despite first hatching the plan to do so in 2009. Under Casco's theory, Deere decided to unjustly terminate in 2009 but craftily delayed "precisely to reduce its exposure for an eventual termination." This is pure speculation unsupported by any citation to the record, and Casco failed to allege this theory in its complaint. Besides the dearth of evidence and likely waiver, it is odd for Casco to claim that Deere wronged it by not unjustly terminating sooner. Thus, evidence of Casco's profits for the five years preceding 2009 was properly excluded.

## D. Deere's Counterclaim

Casco also seeks to vacate the district court's grant of judgment as a matter of law on Deere's counterclaim and the denial of Casco's post-judgment motion to dismiss that claim. We review de novo. Walsh, 853 F.3d at 8.

The court ordered Casco to pay Deere its outstanding balance of $219,913, which Casco admits was incurred prior to and came due at termination. Casco claims that under Article 1077 of the Puerto Rico Civil Code, because Deere breached the Agreement, its obligations to pay Deere should be rescinded. See P.R. Laws Ann. tit. 31 § 3052. Casco is incorrect.

Article 1077 permits a party to rescind its half of a mutual obligation if the other party fails to comply with its reciprocal obligation. See id.; cf. Martinez v. Colon Franco, RE-86-6, 1989 WL 608549 (P.R. Dec. 19, 1989) (Off. Trans.) (explaining same principle embodied in different part of civil code). Here, the money owed by Casco was for supplies rendered to Casco prior to termination. Payment for these supplies was not conditioned on the continuing force of the Agreement, but only on Deere's providing them to Casco, which it did. Therefore, Casco owed Deere money regardless of termination and the district court correctly granted judgment as a matter of law on the counterclaim.

## E. Damages

Finally, Deere seeks a remittitur on termination damages, or alternatively, a new trial as to damages. We review for abuse of discretion the district court's denials of these motions. Sindi, 896 F.3d at 13. A court may remit a jury's damage award only if it "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it." Trainor v. HEI Hosp., LLC, 699 F.3d 19, 29 (1st Cir. 2012) (quoting Wortley v. Camplin, 333 F.3d 284, 297 (1st Cir. 2003)).

The jury awarded termination damages of $522,011 for lost profits and $918,483 for loss of goodwill, the amounts calculated by Casco's expert. Deere contends that the expert made methodological errors in arriving at those numbers and so the award should be correspondingly remitted or vacated. But Deere never asked the trial court to exclude the testimony of Casco's expert for either a lack of qualifications or use of an invalid methodology, instead relying on cross-examination to show that the expert was incorrect. The jury was unconvinced. See Newell, 20 F.3d at 21("When the factual underpinning of a[] [properly admitted] expert opinion is weak, it is a matter affecting the weight and credibility of the testimony -- a question to be resolved by the jury") (quoting Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988)).

Meanwhile, Casco's president testified that the company suffered termination damages of over one million dollars per year.

In the end, the jury faced competing testimony from qualified experts and chose an award recommended by one of them, which was within the bounds of a "rational appraisal."  See Trainor, 699 F.3d at 29.  The district court did not abuse its discretion by declining to upset the jury award or order a new trial on damages.

## IV.   CONCLUSION

For the foregoing reasons, we **affirm** the judgment of the district court on all counts.  The parties shall bear their own costs of appeal.